Eric H. Gibbs (SBN 178658)
ehg@classlawgroup.com
Dylan Hughes (SBN 209113)
dsh@classlawgroup.com
Steve Lopez (SBN 300540)
sal@classlawgroup.com
**GIBBS LAW GROUP LLP**
One Kaiser Plaza, Suite 1125
Oakland, California 94612
Telephone:   (510) 350-9700
Facsimile:    (510) 350-9701

Kim D. Stephens (*pro hac vice* to be submitted)
kstephens@tousley.com
Jason T. Dennett (*pro hac vice* to be submitted)
jdennett@tousley.com
**TOUSLEY BRAIN STEPHENS PLLC**
1700 7th Avenue, Suite 2200
Seattle, Washington 98101
Telephone: (206) 682-5600
Facsimile: (206) 682-2992

[Additional counsel on signature page]

*Attorneys for Plaintiff*

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| BILLY GLENN, on behalf of himself and all others similarly situated, <br><br> Plaintiff, <br><br> v. <br><br> HYUNDAI MOTOR AMERICA and HYUNDAI MOTOR COMPANY, <br><br> Defendants. | Case No. <br><br> CLASS ACTION COMPLAINT <br><br> **DEMAND FOR JURY TRIAL** |

CLASS ACTION COMPLAINT

Plaintiff Billy Glenn, on behalf of himself and all others similarly situated, alleges the following against Defendants Hyundai Motor America and Hyundai Motor Company (collectively, "Hyundai"):

## SUMMARY OF CASE

1.  Historically, automobile sunroofs have been modestly sized, spanning just a small portion of the roof over the driver and front passenger seats. Starting in the mid-2000s, manufacturers introduced a substantially larger style of "panoramic" sunroof, which spans almost the whole roof. These sunroofs are aesthetically pleasing, and thus command a premium price, but also pose new and significant engineering challenges. Replacing metal roofs with large plates of glass requires precision in the strengthening, attachment, and stabilization of the glass.

2.  Hyundai (and other manufacturers) have failed to meet these demands, with several manufacturers issuing safety recalls because of the propensity of panoramic sunroofs to spontaneously shatter. For Hyundai vehicles, over one hundred drivers have now reported to the National Highway Traffic and Safety Administration ("NHTSA") that their panoramic sunroofs shattered. The shattering is so powerful that startled drivers have compared it to the sound of a gunshot that is followed by glass raining down upon the occupants of the vehicle, sometimes while driving at highway speeds.

3.  Hyundai has known about the problem since at least October 2012, when the NHTSA initiated an investigation into the 2012 Hyundai Veloster, which prompted a partial and limited recall. In December 2012, the Korea Automobile Testing & Research Institute ("KATRI"), which is the South Korean government's automotive safety and testing arm, launched an investigation into shattering panoramic sunroofs of numerous automotive manufacturers including Hyundai. Throughout KATRI's investigation, Hyundai and other manufacturers were kept apprised and KATRI ultimately concluded that the panoramic sunroofs were prone to spontaneous shattering, at least in part due to ceramic tint used on the glass.

CLASS ACTION COMPLAINT

4.     Despite its awareness of the danger, Hyundai to this day has not warned drivers about the risk of sunroof shattering, still sells the defective vehicles, and denies that the defect exists even after owners experience the problem.

5.     Hyundai's conduct violates California's consumer protection laws and breaches its warranty obligations. On behalf of the class he proposes to represent, Plaintiff Billy Glenn seeks awards of damages and appropriate equitable relief, including an order enjoining Hyundai from continuing to sell vehicles without disclosing the defect to its customers.

## PARTIES

6.     Plaintiff Billy Glenn is a citizen and resident of Saraland, Alabama.

7.     Defendant Hyundai Motor America ("HMA") is a California corporation with its headquarters and principal place of business at 10550 Talbert Avenue, Fountain Valley, California 92708. HMA is the U.S. sales, marketing, and distribution subsidiary of its Korean parent company, Hyundai Motor Company. HMA is responsible for importing, marketing, advertising, distributing, selling, leasing, warranting, and servicing Hyundai vehicles in the United States.

8.     Defendant Hyundai Motor Company ("HMC") is a corporation organized and existing under the laws of the Republic of Korea and has its principal place of business in Seoul, South Korea.

9.     HMA and HMC, collectively, are referred to herein as "Hyundai."

## JURISDICTION AND VENUE

10.     This Court has jurisdiction over this action under the Class Action Fairness Act, 28 U.S.C. § 1332(d). There are at least 100 members in the proposed class, the aggregated claims of the individual class members exceed the sum or value of $5,000,000, exclusive of interest and costs, and this is a class action in which Hyundai and more than two-thirds of the proposed plaintiff class are citizens of different states.

11.     This Court may exercise jurisdiction over Hyundai because it has located its American headquarters in California; it is registered to conduct business in California; it

CLASS ACTION COMPLAINT

has sufficient minimum contacts in California; and it intentionally avails itself of the markets within California through the promotion, sale, marketing, and distribution of its vehicles, thus rendering the exercise of jurisdiction by this Court proper and necessary.

12.     Venue is proper in this District under 28 U.S.C. § 1391 because HMA is headquartered in this district, HMC is a foreign entity, and a substantial part of the events or omissions giving rise to Plaintiff's claims occurred in this District.

**SUBSTANTIVE ALLEGATIONS**

**The Defective Hyundai Panoramic Sunroofs**

13.     HMA and HMC manufacture, market, and distribute mass-produced automobiles in the United States under the Hyundai brand name. The Hyundai automobile models that are the subject of this case are the 2011-2015 Sonata, Tucson, and the Veloster, and the 2013-2015 Santa Fe, Santa Fe Sport, and the Elantra GT with factory-installed panoramic sunroofs ("Class Vehicles").

14.     Panoramic sunroofs are a relatively new alternative to traditional sunroofs—they are both wider and longer, covering most of the vehicle's roof. Hyundai markets the panoramic sunroofs as a luxury upgrade, since the sunroofs provide extra light and an "open air" feeling while driving, and charges its customers several thousand dollars for the upgrade. The actual material cost of the panoramic sunroofs is fairly low, making the option one of the more profitable features in the automotive industry.

CLASS ACTION COMPLAINT

15.     Panoramic sunroofs are made of large glass plates that attach to tracks, which in turn are set within a frame attached to the vehicle. Most panoramic sunroofs, including those offered by Hyundai, include a retractable sunshade. A photo of the sunroof in the Hyundai Santa Fe Sport from Hyundai USA's website[1] appears below:



16.     Hyundai makes its panoramic sunroofs out of tempered glass, also known as toughened glass. In the automotive industry, tempered or toughened glass is generally made by shaping and cutting a piece of annealed glass that is then heated and rapidly cooled. This tempering process creates an outer layer of compression shrink-wrapped around the middle of the glass that is constantly pressing outwards, making the final product stronger than non-tempered glass. If the outer layer is compromised, however, the entire piece of glass shatters explosively.

---

[1] https://www.hyundaiusa.com/santa-fe-sport/gallery.aspx.

CLASS ACTION COMPLAINT

17.     Hyundai, like other automobile manufacturers, is under a mandate to improve fuel efficiency, and has done so in part by lightening loads by thinning the glass used in its panoramic sunroofs. Thinner glass, however, is difficult to temper properly (especially when thicknesses are 4mm or less) as the compressive layers are thinner, allowing greater probability of compromise.

18.     In addition, before the panoramic sunroof glass undergoes tempering, a ceramic paint is applied. The ceramic paint is composed of fine powders of ground glass, pigments, and other additive oxides, sulfides, or metals. These ceramic enamels are applied on the top around the edges of panoramic sunroof glazing and serve aesthetic and functional purposes. The ceramic paint appears as a black band along the edge of the glass.

19.     Ceramic paints are known adulterants in automotive glass tempering and significantly weaken the structural strength and integrity of the Class Vehicles' panoramic sunroofs. Among other things, ceramic enamels compromise glass strength because: (i) the enamels have different thermal expansion coefficients than the glass substrates (*i.e.*, the glass and the paint expand at different rates) resulting in residual stress between the ceramic enamel and the glass substrate; and (ii) the fine powders used in the ceramic paint can chemically weaken the strength of the glazing.

20.     In order to reduce road and wind noise, as well as to make panoramic sunroofs less susceptible to leaking rainwater, Hyundai also takes steps to fasten the sunroof glass to the vehicle with a sufficient degree of tightness. However, this also presents a challenge, as the exertion of such pressure weakens the glass, with the flexing and vibration of ordinary driving imposing further stress.

21.     In Class Vehicles, the glass used in production cannot withstand the pressures and flexing that the sunroof frame and vehicle demand. The consequence is that under ordinary driving conditions, the glass spontaneously shatters as seen on the following picture of Plaintiff Billy Glenn's 2014 Hyundai Santa Fe Sport:

CLASS ACTION COMPLAINT

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28



*Shattered sunroof on Plaintiff Billy Glenn's 2014 Hyundai Santa Fe Sport*

### <u>Consumer Complaints Reveal the Magnitude of the Defect</u>

22.    Below are just a few examples of the numerous complaints lodged with the National Highway Traffic Safety Administration ("NHTSA") by Hyundai owners and lessees. Few, if any, of the drivers who have contacted the federal government have reported that the shattering occurred because of a projectile striking their vehicle. According to several drivers, sunroof failures can occur within just a few weeks of purchase. The following complaints are also viewable online at www.safercar.gov.

<u>2012 Hyundai Veloster</u>: The sunroof shattered violently in an upwards direction, sending some glass down inside the car and the rest all over the exterior. After googling I found out there are many other Veloster owners that have had identical instances where their sunroofs shattered spontaneously. This could have resulted in serious injury. The dealership says they do not know exactly what causes it, but they are working on it

6

with Hyundai. They have another sunroof on order, but am worried I may have this happen again due to their manufacturing defect for this component.
(NHTSA ID Number: 10462857, Date Complaint Filed: 06/23/2012)

2013 Hyundai Elantra: While driving on I80 in Indiana I heard a loud noise in the roof area, so I slid the cover on the sunroof open and found the glass spiderweb. By the time I pulled over the glass was totally shattered. At the time of the incident there were no trucks near me nor was I near an overpass.
(NHTSA ID Number: 10478787, Date Complaint Filed: 10/05/2012)

2013 Hyundai Elantra: I had just gotten onto the freeway when I noticed things flying off the back of my car. I wasn't sure what it was so I opened my sunroof slider a little and saw that mysunroof had shattered. I did not go under an underpass so I cannot be sure what happened. All I know is it cost me $500 deductible to get it fixed. My car is only 3 months old, so that doesn't seem right. I have had 4 cars with sunroofs and never had anything like this happen. Please advise me as to my options. I'm afraid to drive it now!
(NHTSA ID Number: 10478837, Date Complaint Filed: 10/06/2012)

2013 Hyundai Santa Fe: While driving home from vacation, 600 miles into the drive and 200 miles from home, I hear a loud bang. I look up to find that the sunroof of my car has exploded. Nothing hit the car and no debris at the instant of the explosion fell into the car. It seemed to have exploded outward but there was no evidence of what caused the explosion. Small shards of glass from around the edge of the gaping hole began to fall into the car, though the majority of the glass had flown out because I was going 65mph. I pulled over, patched the sunroof with duct tape and trash bags and continued to drive home. I will take the car to the dealership tomorrow to get it fixed. After a quick google search, I turned up that Hyundai is recalling other cars because of this problem. My car has a panoramic sunroof, just like the Velosters. NHTSA, please broaden your investigation of Hyundais' sunroofs to include Santa Fe Sports too!!
(NHTSA ID Number: 10490154, Date Complaint Filed: 12/26/2012)

2013 Hyundai Santa Fe: I was driving down the freeway, at about 65 miles per hour, when I hear a loud explosion noise that sounded like a gunshot. I had no idea what was happening and then I could hear the sound of wind

CLASS ACTION COMPLAINT

coming from the sunroof. Luckily, the fabric part that slides back and forth was closed so none of the glass came in. I exited the freeway and pulled into a parking lot to see what had happened. Almost all of the glass on the front half of the sunroof had completely exploded out and left a gaping hole.

(NHTSA ID Number: 10510702, Date Complaint Filed: 05/05/2013)

2014 Hyundai Santa Fe: I was driving down the highway at approximately 75 miles per hour on a sunny day, and I suddenly heard this huge "pop" like someone had just shot my window out with a gun. At first I thought I blew out a tire but got out and checked and there was no damage there. I kept hearing wind whooshing through the cabin of my car, and finally I opened up the fabric cover of my sunroof and my sunroof was completely blown out! There were no trucks with rocks or any other means by which this sunroof could have shattered like that. It just plain blew out on its own. I got home and checked on my computer and sure enough, there were numerous complaints about Hyundais that had defective sunroofs that just blew out for no reason.

(NHTSA ID Number: 10725834, Date Complaint Filed: 06/17/2015)

2013 Hyundai Santa Fe: I was driving about 45 mph on an open road, little to no traffic. The sunroof in my Santa Fe spontaneously exploded. We heard a very loud bang. A large piece of glass flew up and out of my car. Several small pieces of glass fell into the car, on me and my 9 year old daughter (who was in the backseat/driver side). The falling glass ranged from slivers to pea sized to larger than 2 inches. The glass continued to fall into the car. I closed the sunshade on the sunroof to try to keep the rest of the falling glass off of us. I was only about 1/2 mile from home. I drove home and parked in my garage. The panoramic sunroof has 2 pieces of glass. The entire front panel was shattered, and had a large hole just to the right of center. This was after 6pm. I called the Hyundai dealership first thing the next morning. The service person I spoke to stated this was the 2nd exploding sunroof they have seen this month. I had the car towed to the dealership. When we got to the dealership the rest of the sunroof had shattered and fallen into the car. The car was filled with glass. I had 2 small glass slivers in my hand that I easily removed. I have a small glass sliver in my chin still. My daughter has a few small scratches on her stomach (she was wearing a cropped sports top).

(NHTSA ID Number: 10693694, Date Complaint Filed: 03/11/2015)

CLASS ACTION COMPLAINT

<u>2013 Hyundai Sonata</u>: I was on my way into work driving down the highway and out of no where a hear this very loud explosion like a gun going off and thought someone had shot me. I then felt things falling on my head and lap, so I pulled over to the shoulder of the highway and turned the inside light on and saw shattered glass and then looked up and my sunroof was gone. I drove to the dealership and got out of my car and I could see with the glass remaining on the back part of the sunroof that the piece of glass was going outward, just like if something blew up. This could have caused me to be injured or have a accident. Please look into this matter before someone really gets hurt.
(NHTSA ID Number: 10695054, Date Complaint Filed: 03/18/2015)

<u>2012 Hyundai Sonata</u>: I was driving down the interstate going around 60-65mph. I heard a loud boom that sounded like a gunshot, as soon as I had a safe moment to pull over I then realized it was my sunroof that has busted. I then was able to step out of my car and realized my sunroof had busted from the inside out. I am very thankful that I was able to stay calm, cool, and collective. I couldn't imagine if the pull of my sunroof from inside the call had been opened. It would have defiantly caused a hazard not only to myself but to other passengers and drivers on the highway.
(NHTSA ID Number: 10671663, Date of Incident: 01/11/2015)

<u>2013 Hyundai Tucson</u>: Hyundai panoramic sunroof exploded Father's Day 2015, we were traveling westbound on Hwy 70 from Little Rock to Hot Springs AR around 10:45 am. It was not excessively hot, and it was a bit overcast. There was no noise alerting us to the impending explosion. And that explosion sounded just like a gunshot at very close range. Thankfully, we had the shade closed when the forward portion of the sunroof literally blew up, sending a thousand glass shards thru the air, onto the shade, and bounding off the top and rear of the car...we were able to pull over and remove much of the glass shards, but the glass still clinging to the frame of the sunroof was curved upward, like to had literally blown "up"....I went online and saw many pictures and stories of this same thing happening to others, throughout the country. The safety ramifications seem more than enough to warrant some sort of investigation and action by the Hyundai company.
(NHTSA ID Number: 10702749, Date Complaint Filed: 03/30/2015)

<u>2015 Hyundai Tucson</u>: While driving on a highway the sunroof on my 3 week old car suddenly imploded at random. It was not hit by any objects or

9

CLASS ACTION COMPLAINT

debris. The panoramic roof was closed at the time but the screen underneath was open so that you could see through the window. The glass was scattered throughout the front and back seats as well as found on top of the back portion of the roof. No injuries resulted but an extremely dangerous defect that should be addressed immediately.
(NHTSA ID Number: 10669369, Date Complaint Filed: 12/31/2014)

2013 Hyundai Elantra: Driving on the loop 101 and heard a loud noise inside the car almost like a gunshot, pulled over and noticed that the sunroof had shattered into tiny pieces, it was not extremely cold and I have only had this vehicle for 2 weeks.
(NHTSA ID Number: 10562847, Date Complaint Filed: 02/04/2014)

## **Hyundai's Knowledge of the Defect**

23.     Hyundai has long known that its sunroofs are prone to unexpected and dangerous shattering.

24.     On October 2, 2012, NHTSA launched an investigation into the 2012 Hyundai Veloster after receiving numerous reports and complaints of spontaneously shattering panoramic sunroofs. Numerous injuries from falling glass were noted by NHTSA in the investigation and that such incidents pose a risk of personal injury or vehicle crash.

25.     On December 6, 2012, Hyundai notified NHTSA that it would conduct a safety recall on certain production cycles of the 2012 Veloster claiming the panoramic sunroof assembly was weakened during installation at the factory. Hyundai claimed that a "malfunction of a limit switch for the panoramic sunroof assembly's unloading station robot may have occurred, allowing forced contact between the mechanism and the sunroof glass." Hyundai further claimed that this contact could have caused damage to the sunroof glass and could lead to subsequent shattering of the glass in the field.

26.     As part of the recall process, Hyundai issued Technical Service Bulletin

CLASS ACTION COMPLAINT

#13-01-005-2 (the "TSB").[2] In the TSB, Technicians were to utilize a paper template placed on top of the front glass panel with three (3) round holes located on the edge directly over the CPA. Then, technicians were to use a 19.5 inch PVC pipe and drop a steel ball through it onto the three holes in the template. If the glass failed, the sunroof had to be replaced.

27.     Concerned by the lack of specificity and clarity with Hyundai's response, NHTSA challenged the scope of the recall. In response, Hyundai expanded the scope of vehicles covered by the recall.

28.     As part of the recall process, NHTSA required Hyundai to submit quarterly reports on testing results. Of more than 65,000 vehicles tested, more than 10% failed, with failure rates upon testing for certain vehicle groups exceeding 16%.

29.     At approximately the time Hyundai notified NHTSA, in December 2012, that it was issuing a partial recall of the 2012 Veloster, the Korea Automobile Testing & Research Institute ("KATRI") launched its own investigation into spontaneous sunroof explosions after receiving numerous complaints occurring in South Korea since 2011.

30.     KATRI did not limit the scope of its investigation to the 2012 Veloster, instead investigating shattering panoramic sunroofs in all Class Vehicles (as well as in other manufacturers' vehicles). Over ensuing years, Hyundai was notified and kept apprised of KATRI's investigation through direct contact as well as through various trade organizations of which Hyundai was a member. This included a hearing in November 2013 before Korea's Ministry of Land, Infrastructure, and Transport ("MOLIT") where KATRI presented its findings and allowed automakers to respond. Representatives from Hyundai as well as other manufacturers were present at this

_____

[2] Available at http://www-odi.nhtsa.dot.gov/acms/cs/jaxrs/download/doc/UCM436109/RCRIT-13V051-5876.pdf.

CLASS ACTION COMPLAINT

meeting. According to KATRI, its investigation confirmed that the panoramic sunroofs are prone to shattering, at least in part due to the fact that the ceramic printed area is compromised.

31.     Given the speed and frequency with which the panoramic sunroofs in Class Vehicles shatter, it is likely that Hyundai knew of the danger of shattering before it first began selling and leasing the vehicles. Hyundai studies and tracks potential vehicle defects through exhaustive pre-release testing.

32.     Hyundai also uses a variety of means to determine how its vehicles are performing in the days, weeks, and months after they are sold. Hyundai collects information from drivers and dealerships, through among other things, complaints, warranty claims, replacement parts data, and other aggregated data sources. That data is particularly likely to trigger awareness of a problem within Hyundai where, as here, the problem affects driver and passenger safety, occurs relatively early in the life of the vehicle, and substantially detracts from customer satisfaction. Although Hyundai alone knows exactly what its information revealed in 2011 and 2012, the rapidity with which the panoramic sunroofs have failed and the vocal nature of the complaints from frightened drivers suggest that after just a very small number of reports, Hyundai would have become aware of and began investigating the problem.

33.     One source of corroborating publicly available information is the database of driver complaints on the NHTSA website, which Hyundai monitors in the ordinary course of its business for emerging problems with its vehicles. A survey of those complaints shows that drivers began reporting the problem as early as 2012 and that by then, Hyundai dealerships and Hyundai itself were aware of the problem. The NHTSA database tends to contain far fewer complaints than Hyundai's internal databases, however, since most drivers first react by communicating with their dealership or Hyundai corporate, rather that the government, and many drivers do not even know NHTSA exists or accepts driver complaints. Hyundai also participates in discussions, meetings, conferences of international rule-making bodies, and international trade

organizations where the defects associated with the Class Vehicles and their panoramic sunroofs were and are the topic of discussion and reform.

## The Costs and Dangers Posed to Occupants of Class Vehicles

34.     As NHTSA, KATRI, and various manufacturers have acknowledged, the sudden and spontaneous shattering of a sunroof endangers drivers, passengers, and others on the road. Panoramic sunroofs, which are intended to last the life of the vehicle, are also often an expensive upgrade costing thousands of dollars. The repair of a shattered panoramic sunroof also typically costs thousands and can be an elaborate procedure, often requiring that a driver give up their vehicle for up to a week or more. A reasonable person considering whether to purchase or lease a Class Vehicle who learned about the propensity of the panoramic sunroofs to shatter would find these costs material, and would opt against paying the thousands of dollars for an upgrade or simply forego purchasing the vehicle altogether.

35.     When Hyundai sunroofs shatter, they make a sudden and extremely loud noise, and often send shards of glass raining down onto the driver and passengers. Drivers report that the falling shards of glass have cut them and their passengers and have also caused damage to the interior of their vehicles. Drivers have also reported a number of near-miss accidents that have occurred after they were startled by the shattering.

36.     Both Hyundai and other manufacturers acknowledge the danger posed by shattering sunroofs. Hyundai initiated the "safety recall" referenced above, acknowledging that the shattering "relates to motor vehicle safety," including by posing a risk of cutting vehicle occupants. In connection with the recall, NHTSA wrote that the breaking of the sunroof could lead "to personal injury or a vehicle crash." Likewise, Volkswagen initiated a safety recall for shattering panoramic sunroofs, and it too

CLASS ACTION COMPLAINT

acknowledged that drivers "could be injured by falling glass," and that "[i]f the glass panel were to break while the vehicle is in motion, it could cause driver distraction, increasing the risk of a crash."[3] In connection with that recall, NHTSA wrote that "should the sunroof's glass break while the vehicle is in use, the falling glass could cut and injure the driver or passengers [and] could also distract the driver, increasing the risk of a crash."

37.     Like NHTSA, KATRI recognized the danger posed by shattering panoramic sunroofs. KATRI concluded that the sudden shattering may cause "abrasions due to shattered glass" and also cause the "risk of secondary accidents."

### Hyundai Breached its Warranty Obligations

38.     Hyundai provides a 5-year/60,000-mile new vehicle limited warranty, which it claims: "Covers repair or replacement of any component manufactured or originally installed by Hyundai that is defective in material or factory workmanship, under normal use and maintenance." While certain parts like radio and audio systems, paint, battery and wear items, are excluded from this coverage, the panoramic sunroofs are not excluded. Hyundai claims: "America's Best Warranty does more than give you peace of mind, it's a commitment from Hyundai to maintain a high degree of quality, dependability and reliability."[4]

39.     Although many panoramic sunroof failures occur within the express warranty that Hyundai provides with its new and certified pre-owned vehicles, instead of honoring its warranty obligations, Hyundai employs a concerted practice to avoid paying

---

[3] Jenna Reed, *VW Recalls Certain Beetle Models Over Potential Panoramic Sunroof Issue*, glassBYTEs.com (Dec. 11, 2014), http://www.glassbytes.com/2014/12/vw-recalls-certain-beetle-models-over-potential-panoramic-sunroof-issue/; Volkswagen of America, Inc., *Volkswagen Issues Voluntary Recall* (Dec. 7, 2014), https://media.vw.com/release/856/.

[4] *Id.*

for sunroof replacements. Even though it knows that its panoramic sunroofs are prone to shattering, Hyundai has consistently told drivers that their sunroofs have performed properly and denies warranty coverage. Hyundai's dealers also instruct customers that their sunroof failures will not be covered under warranty. Instead, when customers call to complain, Hyundai denies that sunroof failures are the result of a systemic defect.

40.    As a result of Hyundai's warranty practices, Plaintiff and Class Members are required to incur substantial repair bills, make claims under their automotive insurance policies, and pay for resulting insurance deductibles when the sunroofs of their vehicles spontaneously shatter.

## **Hyundai's Concealment of the Defect and Its Refusal to Warn Drivers**

41.    Despite its knowledge of the fact that the panoramic sunroofs in Class Vehicles are prone to shattering and thus endangering drivers, passengers, and others on the road, Hyundai continues to conceal the problem from drivers and potential customers alike. Hyundai has not warned consumers at the point of sale or lease (nor instructed its dealerships to do so), and has made no effort to alert Hyundai drivers to the sunroofs' risk of suddenly shattering. As a result, most drivers are unaware that they are driving unsafe vehicles and consumers are deprived of the right to make informed purchasing decisions taking into account the available information about the propensity of the panoramic sunroofs to shatter, the danger posed, and the cost of repair.

42.    As Hyundai knows, the problem is not reasonably discoverable by consumers unless they experience the shattering first hand, and thus, are exposed to the attendant safety risks.

43.    While vehicles with similar sunroof problems have been the subject of voluntary safety recalls—which by law notify drivers of the danger—Hyundai continues to profit from the sale and lease of defective vehicles to unwitting consumers and continues to decline assistance with repair costs even for Class Vehicles that remain within warranty.

**PLAINTIFF'S EXPERIENCE**

44.     Plaintiff Billy Glenn purchased a new 2014 Hyundai Santa Fe Sport in September 2014, from the Eastern Shore Hyundai dealership located in Daphne, Alabama. Mr. Glenn's vehicle was equipped with a factory-installed panoramic sunroof. Mr. Glenn wanted a safe vehicle, as his grandchildren and wife would be riding with him frequently, and he researched the 2014 Hyundai Santa Fe on the internet prior to his purchase, including by visiting Hyundai's website.

45.     In February 2015, when the vehicle had about 10,000 miles, Mr. Glenn was driving with his wife and daughter, when the panoramic sunroof shattered, showering everyone inside the vehicle with glass. He contacted Eastern Shore Hyundai dealership the next day, and contacted HMA on February 6, 2015. Both the dealership and HMA refused to cover the costs of repair. Mr. Glenn filed a claim with his insurance company, which required him to pay a $100 deductible in connection with the sunroof repair and replacement.

46.     Less than one month after this incident, on March 4, 2015, the newly replaced panoramic sunroof also spontaneously shattered. Once again, Mr. Glenn contacted the dealership and HMA. Again, both the dealership and HMA refused to cover the costs of repair. Mr. Glenn filed another insurance claim, and had to pay yet another $100 deductible for the repair and replacement of his vehicle's sunroof. Mr. Glenn incurred rental car costs while his vehicle was being repaired.

47.     Mr. Glenn did not learn of the sunroof defect until 2015. Had he been aware of the defect, Mr. Glenn would either not have purchased his 2014 Hyundai Santa Fe Sport or would have paid less for it than he did.

**CLASS ACTION ALLEGATIONS**

48.     Pursuant to Rule 23 of the Federal Rules of Civil Procedure, Plaintiff brings this action on behalf of himself and the following proposed nationwide class, within which the term "Class Vehicle" is defined to include all of the models below that are equipped with factory-installed panoramic sunroofs:

CLASS ACTION COMPLAINT

a.      2013-present model year Hyundai Santa Fe Sport vehicles;

b.      2013-present model year Hyundai Santa Fe vehicles;

c.      2013-present model year Hyundai Elantra GT vehicles;

d.      2011-present model year Hyundai Sonata vehicles;

e.      2011-present model year Hyundai Tucson vehicles;

f.      2011-present model year Hyundai Veloster vehicles;

<u>Nationwide Class</u>:

*All persons who purchased or leased a Class Vehicle in the United States.*

49.     In the alternative, Plaintiff seeks to represent an Alabama state class defined as follows:

<u>Alabama Class</u>:

*All persons who purchased or leased a Class Vehicle in Alabama.*

50.     Excluded from the proposed class(es) is Hyundai; any affiliate, parent, or subsidiary of Hyundai; any entity in which Hyundai has a controlling interest; any officer, director, or employee of Hyundai; any successor or assign of Hyundai; anyone employed by counsel in this action; any judge to whom this case is assigned, his or her spouse; and members of the judge's staff; and anyone who purchased a Class Vehicle for the purpose of resale.

51.     Members of the proposed class(es) are readily ascertainable because the class definition is based upon objective criteria.

52.     **Numerosity**. Hyundai sold thousands of Class Vehicles, including a substantial number in California and Alabama. Members of the proposed class(es) likely number in the thousands and are thus too numerous to practically join in a single action. Class members may be notified of the pendency of this action by mail, supplemented by published notice (if deemed necessary or appropriate by the Court).

53.     **Commonality and Predominance**. Common questions of law and fact exist as to all proposed class members and predominate over questions affecting only individual class members. These common questions include:

a.    Whether the sunroofs in Class Vehicles have a propensity to spontaneously shatter;

b.    Whether Hyundai knew or should have known that its sunroofs have a propensity to spontaneously shatter, and if so, when it discovered this;

c.    Whether the knowledge of this propensity would be important to a reasonable person, for example, because it poses an unreasonable safety hazard;

d.    Whether Hyundai failed to disclose and concealed the existence of the sunroofs' propensity to shatter from potential customers;

e.    Whether Hyundai has breached its express and implied warranty obligations;

f.    Whether Hyundai breached obligations to Plaintiff and Class Members imposed by common law doctrines;

g.    Whether Hyundai should be required to notify drivers and consumers about the sunroofs' propensity to spontaneously shatter and cease its practice of replacing shattered panoramic sunroofs with equally defective replacement sunroofs;

h.    Whether Hyundai's conduct, as alleged herein, violates Cal. Bus. & Prof. Code § 17200, *et seq.*;

i.    Whether Hyundai's conduct, as alleged herein, violates Cal. Civ. Code § 1750, *et seq.*;

j.    Whether Hyundai's conduct, as alleged herein, violates the Code of AL § 8-19-1 *et seq.*; and

k.    Whether, as a result of Hyundai's unlawful conduct, Plaintiff and members of the Classes have suffered an injury in fact and lost money or property.

54.    **Typicality**. Plaintiff's claims are typical of the claims of the proposed

1  class(es). Plaintiff and the members of the proposed class(es) all purchased or leased

2  Class Vehicles with panoramic sunroofs that have a propensity to spontaneously shatter,

3  giving rise to substantially the same claims.

4        55.  **Adequacy**. Plaintiff is an adequate representative of the proposed class(es)

5  because his interests do not conflict with the interests of the members of the class(es) he

6  seeks to represent. Plaintiff has retained counsel who are competent and experienced in

7  complex class action litigation, and will prosecute this action vigorously on class

8  members' behalf.

9        56.  **Superiority**. A class action is superior to other available means for the fair

10  and efficient adjudication of this dispute. The injury suffered by each class member,

11  while meaningful on an individual basis, is not of such magnitude as to make the

12  prosecution of individual actions against Hyundai economically feasible. Even if class

13  members themselves could afford such individualized litigation, the court system could

14  not. In addition to the burden and expense of managing many actions arising from the

15  defective sunroofs, individualized litigation presents a potential for inconsistent or

16  contradictory judgments. Individualized litigation increases the delay and expense to all

17  parties and the court system presented by the legal and factual issues of the case. By

18  contrast, a class action presents far fewer management difficulties and provides the

19  benefits of single adjudication, economy of scale, and comprehensive supervision by a

20  single court.

21        57.  In the alternative, the proposed class(es) may be certified because:

22          a.  the prosecution of separate actions by the individual members of the

23              proposed class would create a risk of inconsistent adjudications,

24              which could establish incompatible standards of conduct for

25              Hyundai;

26          b.  the prosecution of individual actions could result in adjudications,

27              which as a practical matter, would be dispositive of the interests of

28

non-party class members or which would substantially impair their ability to protect their interests; and

c.     Hyundai has acted or refused to act on grounds generally applicable to the proposed class(es), thereby making appropriate final and injunctive relief with respect to the members of the proposed class(es) as a whole.

## **TOLLING OF STATUTES OF LIMITATIONS**

58.     <u>Discovery Rule</u>. Plaintiff's and Class members' claims accrued upon discovery that the panoramic sunroofs installed in their Class Vehicles were prone to spontaneously shattering. While Hyundai knew, and concealed, the fact that the sunroofs installed in the Class Vehicles have a defect that causes spontaneous shattering, Plaintiff and Class members could not and did not discover this fact through reasonable diligent investigation until after they experienced such spontaneous shattering and learned that the problem was not isolated to their vehicle.

59.     <u>Active Concealment Tolling</u>. Any statutes of limitations are tolled by Hyundai's knowing and active concealment of the fact that the panoramic sunroofs installed in the Class Vehicles suffered from an inherent defect. Hyundai kept Plaintiff and all Class members ignorant of vital information essential to the pursuit of their claim, without any fault or lack of diligence on the part of Plaintiff. The details of Hyundai's efforts to conceal its above-described unlawful conduct are in its possession, custody, and control, to the exclusion of Plaintiff and Class members, and await discovery. Plaintiff could not reasonably have discovered the fact that the sunroofs installed in his Class Vehicle were defective and that such sunroofs spontaneously shatter.

60.     <u>Estoppel</u>. Hyundai was and is under a continuous duty to disclose to Plaintiff and all Class members the true character, quality, and nature of the panoramic sunroofs installed in the Class Vehicles. At all relevant times, and continuing to this day, Hyundai knowingly, affirmatively, and actively concealed the true character, quality, and

nature of the panoramic sunroofs installed in the Class Vehicles. The details of Hyundai's efforts to conceal its above-described unlawful conduct are in its possession, custody, and control, to the exclusion of Plaintiffs and Class members, and await discovery. Plaintiff reasonably relied upon Hyundai's active concealment. Based on the foregoing, Hyundai is estopped from relying upon any statutes of limitation in defense of this action.

61.  Equitable Tolling. Hyundai took active steps to conceal the fact that it wrongfully, improperly, illegally, and repeatedly manufactured, marketed, distributed, sold, and leased Class Vehicles with defective sunroofs. The details of Hyundai's efforts to conceal its above-described unlawful conduct are in its possession, custody, and control, to the exclusion of Plaintiff and Class members, and await discovery. When Plaintiff learned about this material information, he exercised due diligence by thoroughly investigating the situation, retaining counsel, and pursuing his claims. Hyundai fraudulently concealed its above-described wrongful acts. Should such be necessary, therefore, all applicable statutes of limitation are tolled under the doctrine of equitable tolling.

## FIRST CAUSE OF ACTION
### Unlawful, Unfair, and Fraudulent Business Practices
### Cal. Bus. & Prof. Code § 17200, *et seq.*
### (Plaintiff individually and on behalf of the proposed Nationwide Class)

62.  Plaintiff re-alleges the paragraphs above as if fully set forth herein.

63.  Hyundai has violated and continues to violate California's Unfair Competition Law, Cal. Bus. & Prof. Code § 17200, *et seq.*, which prohibits unlawful, unfair, or fraudulent business acts or practices.

64.  Hyundai's acts and practices, as alleged in this complaint, constitute unlawful, unfair, and fraudulent business practices, in violation of the Unfair Competition Law. In connection with the sale of Class Vehicles to Plaintiff and Nationwide Class members, Hyundai failed to disclose—at the point of sale or

otherwise—material information about the Class Vehicles—namely, that the panoramic sunroofs in Class Vehicles are defective and pose a safety hazard.

65.     Hyundai's business acts and practices are unlawful in that they violate the Consumers Legal Remedies Act, Civil Code § 1750, *et seq.*

66.     These acts and practices also constitute fraudulent practices in that they are likely to deceive a reasonable consumer. As described above, Hyundai knowingly conceals and fails to disclose at the point of sale and otherwise that Class Vehicles' panoramic sunroofs have a propensity to spontaneously shatter, endangering the personal safety of drivers and passengers and requiring immediate repair. Had Hyundai disclosed this fact, Plaintiff Glenn, Class members, and reasonable consumers would not have purchased Class Vehicles or would have paid significantly less for them.

67.     Hyundai's conduct also constitutes unfair business practices for at least the following reasons:

        a.     The gravity of harm to Plaintiff and the proposed Class from Hyundai's acts and practices far outweighs any legitimate utility of that conduct;

        b.     Hyundai's conduct is immoral, unethical, oppressive, unscrupulous, or substantially injurious to Plaintiff and the members of the proposed Class; and

        c.     Hyundai's conduct undermines or violates the stated policies underlying the Consumers Legal Remedies Act—to protect consumers against unfair and sharp business practices and to promote a basic level of honesty and reliability in the marketplace.

68.     As a direct and proximate result of Hyundai's business practices, Plaintiff and the proposed Class members suffered injury in fact and lost money or property, because they purchased and paid for vehicles and upgrades that they otherwise would not have, or in the alternative, would have paid less for.

69.     Plaintiff and the proposed Nationwide Class members are entitled to

equitable relief, including an order directing Hyundai to disclose the existence of the defect to drivers and consumers and to provide restitution and disgorgement of all profits paid to Hyundai as a result of its unfair, deceptive, and fraudulent practices, reasonable attorneys' fees and costs, and a permanent injunction enjoining such practices.

## SECOND CAUSE OF ACTION

### Violation of the Consumers Legal Remedies Act

### Cal. Civ. Code § 1750, *et seq.*

### (Plaintiff individually and on behalf of the proposed Nationwide Class)

70. Plaintiff re-alleges the paragraphs above as if fully set forth herein.

71. Hyundai is a "person" within the meaning of Civil Code §§ 1761(c) and 1770, and has provided "goods" within the meaning of Civil Code §§ 1761(b) and 1770.

72. Plaintiff and members of the proposed Nationwide Class are "consumers" within the meaning of Civil Code §§ 1761(d) and 1770, and have engaged in a "transaction" within the meaning of Civil Code §§ 1761(e) and 1770.

73. Hyundai's acts and practices, which were intended to result and which did result in the sale of Class Vehicles with defective panoramic sunroofs, violate § 1770 of the Consumers Legal Remedies Act for at least the following reasons:

       a. Hyundai represents that its vehicles and panoramic sunroofs had characteristics, uses, or benefits which they do not have;

       b. Hyundai advertises its goods with intent not to sell them as advertised;

       c. Hyundai represents that its vehicles and panoramic sunroofs are of a particular standard, quality, or grade when they are not;

       d. Hyundai represents that a transaction conferred or involved rights, remedies, or obligations which they do not; and

       e. Hyundai represents that its goods have been supplied in accordance with a previous representation when they have not.

74. As described above, Hyundai knew that the panoramic sunroofs in Class

Vehicles have a propensity to spontaneously shatter, but concealed and failed to disclose this fact to consumers at the point of sale or otherwise. Hyundai intended that Plaintiff and the members of the proposed Class rely on this omission in deciding to purchase their vehicles and sunroofs.

75.    Had Hyundai adequately disclosed the defect, Plaintiff, members of the proposed Class, and reasonable consumers would not have purchased or would have paid less for their vehicles and sunroofs.

76.    Pursuant to California Civil Code § 1780, Plaintiff seeks an order enjoining Hyundai from the unlawful practices described above, a declaration that Hyundai's conduct violates the Consumers Legal Remedies Act, and reasonable attorneys' fees and costs of litigation.

77.    Pursuant to the provisions of Cal. Civ. Code § 1782(a), Plaintiff will send a notice letter to Hyundai to provide them with the opportunity to correct their business practices. If Hyundai does not thereafter correct its business practices, Plaintiffs will amend (or seek leave to amend) the complaint to add claims for monetary relief, including restitution and actual damages under the Consumers Legal Remedies Act.

### THIRD CAUSE OF ACTION

**Unjust Enrichment**

**(Plaintiff individually and on behalf of the proposed Nationwide Class or alternatively, the Alabama Class)**

78.    Plaintiff re-alleges the paragraphs above as if fully set forth herein.

79.    Hyundai has long known that its sunroofs have a propensity to shatter spontaneously, posing a serious safety risk, which it concealed and failed to disclose to Plaintiff and the proposed Nationwide Class members.

80.    As a result of its fraudulent acts and omissions related to the defective sunroofs, Hyundai obtained monies which rightfully belong to Plaintiff and the proposed Nationwide Class members to the detriment of Plaintiff and the proposed Nationwide Class members.

81.    Hyundai appreciated, accepted, and retained the non-gratuitous benefits conferred by Plaintiff and the proposed Nationwide Class members, who, without knowledge of the defect, paid a higher price for their vehicles and sunroofs than those vehicles and options were worth. Hyundai also received monies for vehicles and sunroofs that Plaintiff and the proposed Nationwide Class members would not have otherwise purchased.

82.    It would be inequitable and unjust for Hyundai to retain these wrongfully obtained profits.

83.    Hyundai's retention of these wrongfully-obtained profits would violate the fundamental principles of justice, equity, and good conscience.

84.    Plaintiff and the proposed Nationwide Class are entitled to restitution of the profits unjustly obtained, plus interest.

## FOURTH CAUSE OF ACTION

### Breach of Express Warranty

### (Plaintiff individually and on behalf of the proposed Nationwide Class or alternatively, the Alabama Class)

85.    Plaintiff realleges the paragraphs above as is fully set forth herein.

86.    Hyundai provided all purchasers and lessees of the Class Vehicles with the express warranties described herein, which became part of the basis of the bargain. Hyundai's 5 Year/60,000 Mile New Vehicle Limited Warranty provided repair or replacement of any component originally manufactured or installed by Hyundai that is found to be defective in material or workmanship under normal use and maintenance. Accordingly, Hyundai's warranties are express warranties under state law.

87.    The panoramic sunroofs were manufactured and distributed by Defendants in the Class Vehicles and are covered by the warranties Hyundai provided all purchasers and lessors of Class Vehicles.

88.    Hyundai breached these warranties by selling and leasing Class Vehicles with the defect, requiring repair or replacement within the applicable warranty periods,

and refusing to honor the warranties by providing free repairs or replacements during the applicable warranty periods.

89.     Plaintiff notified Hyundai of the breach within a reasonable time, and/or was not required to do so because affording Hyundai a reasonable opportunity to cure its breach of written warranty would have been futile. Hyundai also knew of the defect and yet chose to conceal it and to fail to comply with its warranty obligations.

90.     As a direct and proximate cause of Hyundai's breach, Plaintiff and the other Class members bought or leased Class Vehicles they otherwise would not have, overpaid for their vehicles, did not receive the benefit of their bargain, and their Class Vehicles suffered a diminution in value. Plaintiff and Class members have also incurred and will continue to incur costs for repair and replacement of defective panoramic sunroofs and damage resulting from the spontaneous shattering of such sunroofs.

91.     Plaintiff and Class members have complied with all obligations under the warranty, or otherwise have been excused from performance of said obligations as a result of Hyundai's conduct described herein.

92.     Plaintiff and the other proposed Class members are entitled to legal and equitable relief against Hyundai, including damages, consequential damages, specific performance, attorney fees, costs of suit, and other relief as appropriate.

## FIFTH CAUSE OF ACTION

### Breach of Implied Warranty

**(Plaintiff individually and on behalf of the proposed Nationwide Class or alternatively, the Alabama Class)**

93.     Plaintiff realleges the paragraphs above as if fully set forth herein.

94.     Hyundai is and was at all relevant times a merchant with respect to the Class Vehicles.

95.     Hyundai was and is in actual or constructive privity with Plaintiff and all Class Members.

a.     Plaintiff had and continues to have sufficient direct dealings with

Hyundai and/or its authorized dealers, franchisees, representatives, and agents to establish any required privity of contract. Hyundai's authorized dealers, franchisees, representatives, and agents were not intended to be the ultimate consumers of the Class Vehicles and have no rights under the warranty agreements provided with the Class Vehicles. The warranty agreements were designed for and intended to benefit only the ultimate purchasers and lessees of the Class Vehicles, *i.e.*, Plaintiff and Class members.

b. Privity is not required to assert this claim because Plaintiff and the Class members are intended third-party beneficiaries of contracts between Hyundai and its dealers, franchisees, representatives, and agents.

c. By extending express written warranties to end-user purchasers and lessees, Hyundai brought itself into privity with all Plaintiff and Class members.

96. At all times relevant hereto, applicable law imposed upon Hyundai a duty that the panoramic sunroofs installed in the Class Vehicles be fit for the ordinary purposes for which sunroofs are used and that they pass without objection in the trade under the contract description.

97. Hyundai has not validly disclaimed, excluded, or modified the implied warranties or duties described above, and any attempted disclaimer or exclusion of the implied warranties was and is ineffectual.

98. The panoramic sunroofs installed in the Class Vehicles were defective at the time they left the possession of Hyundai, as set forth above. Hyundai knew of this defect at the time the purchase and lease transactions occurred. Thus, the panoramic sunroofs installed in the Class Vehicles, when sold and at all times thereafter, were not in merchantable condition or quality because they are not fit for their ordinary intended purpose and they do not pass without objection in the trade under the contract

description.

99.   Plaintiff and Class members used the sunroofs installed in the Class Vehicles in a manner consistent with their intended use and performed each and every duty required under the terms of the warranties, except as may have been excused or prevented by the conduct of Hyundai or by operation of law in light of Hyundai's unconscionable conduct.

100.   Hyundai had actual knowledge of, and received timely notice regarding, the defect at issue in this litigation and, notwithstanding such notice, failed and refused to offer an effective remedy.

101.   In addition, Hyundai received, on information and belief, numerous consumer complaints and other notices from customers advising of the defect associated with the sunroofs installed in the Class Vehicles.

102.   By virtue of the conduct described herein and throughout this Complaint, Hyundai breached the implied warranty of merchantability.

103.   As a direct and proximate result of Hyundai's breach of warranties, Plaintiff and Class members suffered economic damage, including loss attributable to the diminished value of their Class Vehicles, loss of use of their Class Vehicles and other tangible property, as well as the monies spent and to be spent to repair and/or replace their sunroofs.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff requests that the Court enter a judgment awarding the following relief:

a.   An order certifying the proposed Class(es), and appointing Plaintiff's counsel to represent the Class(es);

b.   An order awarding Plaintiff and the Class members their actual damages, punitive damages, and/or any other form of monetary relief provided by law, except that no monetary relief is presently sought for violations of the Consumers Legal Remedies Act;

1           c.     An order awarding Plaintiff and the Class(es) restitution,

2 disgorgement, or other equitable relief as the Court deems proper, except that no

3 monetary relief is presently sought for violations of the Consumers Legal Remedies Act;

4           d.     An order requiring Hyundai to adequately disclose and repair the

5 defect panoramic sunroofs;

6           e.     An order awarding Plaintiff and the Class(es) pre-judgment and post-

7 judgment interest as allowed under the law;

8           f.     An order awarding Plaintiff and the Class(es) reasonable attorney

9 fees and costs of suit, including expert witness fees; and

10           g.     An order awarding such other and further relief as this Court may

11 deem just and proper.

12 **<u>JURY DEMAND</u>**

13      Pursuant to Fed. R. Civ. P. 38(b), Plaintiff demands a trial by jury for all issues so

14 triable under the law.

15

16 DATED: December 10, 2015           Respectfully submitted,

17                                **GIBBS LAW GROUP LLP**

18

19                          By:   */s/ Eric H. Gibbs*

20                              Eric H. Gibbs

21                         Eric H. Gibbs

22                         Dylan Hughes

23                         Steve Lopez

24                         One Kaiser Plaza, Suite 1125

25                         Oakland, California 94612

Telephone:  (510) 350-9700

Facsimile:   (510) 350-9701

ehg@classlawgroup.com

dsh@classlawgroup.com

sal@classlawgroup.com

Kim D. Stephens (*pro hac vice* to be submitted)

CLASS ACTION COMPLAINT

Jason T. Dennett (*pro hac vice* to be submitted)
**TOUSLEY BRAIN STEPHENS PLLC**
1700 Seventh Avenue, Suite 2200
Seattle, WA 98101
Telephone:   (206) 682-5600
Facsimile:   (206) 682-2992
kstephens@tousley.com
jdennett@tousley.com

Gregory F. Coleman (*pro hac vice* to be submitted)
Lisa A. White (*pro hac vice* to be submitted)
Mark E. Silvey (*pro hac vice* to be submitted)
**GREG COLEMAN LAW PC**
First Tennessee Plaza
800 S. Gay Street, Suite 1100
Knoxville, Tennessee 37929
Telephone: (865) 247-0080
Facsimile: (865) 533-0049
greg@gregcolemanlaw.com
lisa@gregcolemanlaw.com
mark@gregcolemanlaw.com

Shanon J. Carson (*pro hac vice* to be submitted)
Eric Lechtzin (SBN 248958 )
**BERGER & MONTAGUE, P.C.**
1622 Locust Street
Philadelphia, PA 19103
215-875-3000 Telephone
215-875-4604 Facsimile
scarson@bm.net
elechtzin@bm.net

Paul C. Peel (*pro hac vice* to be submitted)
**FARRIS BOBANGO BRANAN PLC**
999 S. Shady Grove Road, Suite 500
Memphis, Tennessee 38120
(901) 259-7100 Telephone
(901) 259-7150 Facsimile
ppeel@farris-law.com

CLASS ACTION COMPLAINT

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

*Attorneys for Plaintiff*

CLASS ACTION COMPLAINT