Eric H. Gibbs (SBN 178658)
ehg@classlawgroup.com
David Stein (SBN 257465)
ds@classlawgroup.com
**GIBBS LAW GROUP LLP**
One Kaiser Plaza, Suite 1125
Oakland, California 94612
Telephone:(510) 350-9700
Facsimile: (510) 350-9701

Kim D. Stephens (*pro hac vice*)
kstephens@tousley.com
Jason T. Dennett (*pro hac vice*)
jdennett@tousley.com
**TOUSLEY BRAIN STEPHENS PLLC**
1700 7th Avenue, Suite 2200
Seattle, Washington 98101
Telephone: (206) 682-5600
Facsimile: (206) 682-2992

*Attorneys for Plaintiffs*

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| BILLY GLENN, KATHY WARBURTON, KIM FAMA, and CORINNE KANE, on behalf of themselves and all others similarly situated, <br><br> Plaintiffs, <br> v. <br><br> HYUNDAI MOTOR AMERICA and HYUNDAI MOTOR COMPANY, <br><br> Defendants. | Case No. 8:15-cv-02052-DOC-KES <br><br> **FIRST AMENDED CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL** |

FIRST AMENDED CLASS ACTION COMPLAINT
CASE NO. 8:15-CV-02052-DOC-KES

Plaintiffs Billy Glenn, Kathy Warburton, Kim Fama, and Corinne Kane, on behalf of themselves and all others similarly situated, allege the following against Defendants Hyundai Motor America and Hyundai Motor Company (collectively, "Hyundai"):

## SUMMARY OF CASE

1. Historically, automobile sunroofs have been modestly sized, spanning just a small portion of the roof over the driver and front passenger seats. Starting in the mid-2000s, manufacturers introduced a substantially larger style of "panoramic" sunroof, which spans almost the whole roof. While these sunroofs are aesthetically pleasing, and thus command a premium price, they also pose new and significant engineering challenges. Replacing metal roofs with large plates of glass requires precision in the strengthening, attachment, and stabilization of the glass.

2. Hyundai and other manufacturers have failed to meet these engineering challenges, with several manufacturers issuing safety recalls because of the propensity of panoramic sunroofs to spontaneously shatter. For Hyundai vehicles, over one hundred drivers have now reported to the National Highway Traffic and Safety Administration ("NHTSA") that their panoramic sunroofs shattered. The shattering is so powerful that startled drivers have compared it to the sound of a gunshot, followed by glass raining down upon the occupants of the vehicle, sometimes while driving at highway speeds.

3. Hyundai has known about the problem since at least mid-2012, when its customers began reporting that their sunroofs had spontaneously shattered and the NHTSA initiated an investigation. Then in December 2012, the Korea Automobile Testing & Research Institute ("KATRI"), which is the South Korean government's automotive safety and testing arm, launched an investigation into shattering panoramic sunroofs of numerous automotive manufacturers including Hyundai. Throughout KATRI's investigation, Hyundai and other manufacturers were kept apprised and KATRI ultimately concluded that the panoramic sunroofs were prone to spontaneous shattering, at least in part due to ceramic paint used on the glass.

1

FIRST AMENDED CLASS ACTION COMPLAINT
CASE NO. 8:15-CV-02052-DOC-KES

4.     Despite KATRI's findings, Hyundai has recalled only a small subset of 2012 Veloster vehicles.  The problem extends far beyond that subset, however, to every Hyundai model equipped with panoramic sunroofs.  Indeed, as Defendants are aware, owners of Sonata vehicles, Tucson vehicles, earlier and later model year Veloster vehicles, Santa Fe vehicles, Santa Fe Sport vehicles, and Elantra GT vehicles have all reported spontaneously shattering sunroofs.  Hyundai to this day has yet to warn these drivers about the risk of sunroof shattering, continues to sell vehicles with defective sunroofs, and steadfastly denies that the defect exists even after owners experience the problem.

5.     Hyundai's conduct violates consumer protection laws of California and other states, as well as breaching the company's warranty obligations.  On behalf of the class they propose to represent, Plaintiffs seek awards of damages and appropriate equitable relief.

## PARTIES

6.     Plaintiff Billy Glenn is a citizen and resident of Saraland, Alabama, located in Mobile County.

7.     Plaintiff Kathy Warburton is a citizen and resident of Round Top, Texas, located in Fayette County.

8.     Plaintiff Kim Fama is a citizen and resident of Haverhill, Massachusetts, located in Essex County.

9.     Plaintiff Corinne Kane is a citizen and resident of Vancouver, Washington, located in Clark County.

10.   Defendant Hyundai Motor America ("HMA") is a California corporation with its headquarters and principal place of business at 10550 Talbert Avenue, Fountain Valley, California 92708.  HMA is the U.S. sales, marketing, and distribution subsidiary of its Korean parent company, Hyundai Motor Company.  HMA is responsible for importing, marketing, advertising, distributing, selling, leasing, warranting, and servicing Hyundai vehicles in the United States.

FIRST AMENDED CLASS ACTION COMPLAINT
CASE NO. 8:15-CV-02052-DOC-KES

11.   Defendant Hyundai Motor Company ("HMC") is a corporation organized and existing under the laws of the Republic of Korea and has its principal place of business in Seoul, South Korea.

## JURISDICTION AND VENUE

12.   This Court has jurisdiction over this action under the Class Action Fairness Act, 28 U.S.C. § 1332(d).   There are at least 100 members in the proposed class, the aggregated claims of the individual class members exceed the sum or value of $5,000,000, exclusive of interest and costs, and this is a class action in which Hyundai and more than two-thirds of the proposed plaintiff class are citizens of different states.

13.   This Court may exercise jurisdiction over Hyundai because it has located its American headquarters in California; it is registered to conduct business in California; it has sufficient minimum contacts in California; and it intentionally avails itself of the markets within California through the promotion, sale, marketing, and distribution of its vehicles, thus rendering the exercise of jurisdiction by this Court proper and necessary.

14.   Venue is proper in this District under 28 U.S.C. § 1391 because HMA is headquartered in this district, HMC is a foreign entity, and a substantial part of the events or omissions giving rise to Plaintiff's claims occurred in this District.

## SUBSTANTIVE ALLEGATIONS

### The Defective Hyundai Panoramic Sunroofs

15.   HMA and HMC manufacture, market, and distribute mass-produced automobiles in the United States under the Hyundai brand name.  The Hyundai automobile models that are the subject of this case are the 2011-2016 Sonata, Tucson, and the Veloster, and the 2013-2016 Santa Fe, Santa Fe Sport, and the Elantra GT with factory-installed panoramic sunroofs (collectively, the "Class Vehicles").

16.   Panoramic sunroofs are a relatively new alternative to traditional sunroofs— they are both wider and longer, covering most of the vehicle's roof.  Hyundai markets the panoramic sunroofs as a luxury upgrade, since the sunroofs provide extra light and an "open air" feeling while driving, and charges its customers several thousand dollars for

FIRST AMENDED CLASS ACTION COMPLAINT
CASE NO. 8:15-CV-02052-DOC-KES

the upgrade.  The actual material cost of the panoramic sunroofs is fairly low, making the option one of the more profitable features in the automotive industry.

17.   Panoramic sunroofs are made of large glass plates that attach to tracks, which in turn are set within a frame attached to the vehicle.  Most panoramic sunroofs, including those sold by Hyundai, include a retractable sunshade.  A photo of the sunroof in the Hyundai Santa Fe Sport from Hyundai USA's website[1] appears below:



18.   Hyundai makes its panoramic sunroofs out of tempered glass, also known as toughened glass.  In the automotive industry, tempered or toughened glass is generally made by shaping and cutting a piece of annealed glass that is then heated and rapidly cooled.  This tempering process creates an outer layer of compression that is shrink-wrapped around the middle of the glass, which is constantly pressing outwards, making

---

[1] https://www.hyundaiusa.com/santa-fe-sport/gallery.aspx.

FIRST AMENDED CLASS ACTION COMPLAINT
CASE NO. 8:15-CV-02052-DOC-KES

the final product stronger than non-tempered glass.  If the outer layer is compromised, however, the entire piece of glass shatters explosively.

19.  Hyundai, like other automobile manufacturers, is under a mandate to improve fuel efficiency, and has done so in part by lightening loads through thinning the glass used in its panoramic sunroofs.  Thinner glass, however, is difficult to temper properly (especially when thicknesses are 4mm or less) as the compressive layers are thinner, increasing the probability of compromise.

20.  In addition, before the panoramic sunroof glass undergoes tempering, a ceramic paint is applied.  While the exact composition is proprietary, the ceramic paint is generally composed of fine powders of ceramic frits, pigments, and other additive oxides, sulfides, or metals.  These ceramic enamels are applied on the top around the edges of panoramic sunroof glazing and serve aesthetic and functional purposes.  The ceramic paint appears as a black band along the edge of the glass.

21.  Ceramic paints are known adulterants in automotive glass tempering and significantly weaken the structural strength and integrity of the Class Vehicles' panoramic sunroofs.  Among other things, ceramic enamels compromise glass strength because: (i) the enamels have different thermal expansion coefficients than the glass substrates (*i.e.*, the glass and the paint expand at different rates), resulting in residual stress between the ceramic enamel and the glass substrate; and (ii) the fine powders used in the ceramic paint can chemically weaken the strength of the glazing.

22.  In order to reduce road and wind noise, as well as to make panoramic sunroofs less susceptible to leaking rainwater, Hyundai also takes steps to fasten the sunroof glass to the vehicle with a sufficient degree of tightness.  However, this also presents an engineering challenge, as the exertion of such pressure stresses and weakens the glass, with the flexing and vibration of ordinary driving imposing further stress.

23.  In Class Vehicles, the glass used in production cannot withstand the pressures and flexing that the sunroof frame and vehicle demand.  The consequence is that under

FIRST AMENDED CLASS ACTION COMPLAINT
CASE NO. 8:15-CV-02052-DOC-KES

ordinary driving conditions, the glass spontaneously shatters as seen on the following picture of Plaintiff Billy Glenn's 2014 Hyundai Santa Fe Sport:



**Consumer Complaints Reveal the Magnitude of the Defect**

24.   Below are just a few examples of the numerous complaints lodged with the NHTSA by Hyundai owners and lessees. Few, if any, of the drivers who have contacted the federal government have reported that the shattering occurred because of a projectile striking their vehicle. According to several drivers, sunroof failures can occur within just a few weeks of purchase. The following complaints are also viewable online at www.safercar.gov.

2013 Hyundai Elantra:  While driving on I80 in Indiana I heard a loud noise in the roof area, so I slid the cover on the sunroof open and found the glass spiderweb. By the time I pulled over the glass was totally shattered. At the

FIRST AMENDED CLASS ACTION COMPLAINT
CASE NO. 8:15-CV-02052-DOC-KES

time of the incident there were no trucks near me nor was I near an overpass.
(NHTSA ID Number: 10478787, Date Complaint Filed: 10/05/2012)

2013 Hyundai Elantra:  I had just gotten onto the freeway when I noticed things flying off the back of my car. I wasn't sure what it was so I opened my sunroof slider a little and saw that my sunroof had shattered. I did not go under an underpass so I cannot be sure what happened. All I know is it cost me $500 deductible to get it fixed. My car is only 3 months old, so that doesn't seem right. I have had 4 cars with sunroofs and never had anything like this happen. Please advise me as to my options. I'm afraid to drive it now!
(NHTSA ID Number: 10478837, Date Complaint Filed: 10/06/2012)

2013 Hyundai Santa Fe:  While driving home from vacation, 600 miles into the drive and 200 miles from home, I hear a loud bang. I look up to find that the sunroof of my car has exploded. Nothing hit the car and no debris at the instant of the explosion fell into the car. It seemed to have exploded outward but there was no evidence of what caused the explosion. Small shards of glass from around the edge of the gaping hole began to fall into the car, though the majority of the glass had flown out because I was going 65mph. I pulled over, patched the sunroof with duct tape and trash bags and continued to drive home. I will take the car to the dealership tomorrow to get it fixed. After a quick google search, I turned up that Hyundai is recalling other cars because of this problem. My car has a panoramic sunroof, just like the Velosters. NHTSA, please broaden your investigation of Hyundais' sunroofs to include Santa Fe Sports too!!
(NHTSA ID Number: 10490154, Date Complaint Filed: 12/26/2012)

2013 Hyundai Santa Fe:  I was driving down the freeway, at about 65 miles per hour, when I hear a loud explosion noise that sounded like a gunshot. I had no idea what was happening and then I could hear the sound of wind coming from the sunroof. Luckily, the fabric part that slides back and forth was closed so none of the glass came in. I exited the freeway and pulled into a parking lot to see what had happened. Almost all of the glass on the front half of the sunroof had completely exploded out and left a gaping hole.
(NHTSA ID Number: 10510702, Date Complaint Filed: 05/05/2013)

FIRST AMENDED CLASS ACTION COMPLAINT
CASE NO. 8:15-CV-02052-DOC-KES

2013 Hyundai Elantra:  Driving on the loop 101 and heard a loud noise inside the car almost like a gunshot, pulled over and noticed that the sunroof had shattered into tiny pieces, it was not extremely cold and I have only had this vehicle for 2 weeks.
(NHTSA ID Number: 10562847, Date Complaint Filed: 02/04/2014)

2015 Hyundai Tucson:  While driving on a highway the sunroof on my 3 week old car suddenly imploded at random. It was not hit by any objects or debris. The panoramic roof was closed at the time but the screen underneath was open so that you could see through the window. The glass was scattered throughout the front and back seats as well as found on top of the back portion of the roof. No injuries resulted but an extremely dangerous defect that should be addressed immediately.
(NHTSA ID Number: 10669369, Date Complaint Filed: 12/31/2014)

2012 Hyundai Sonata:  I was driving down the interstate going around 60-65mph. I heard a loud boom that sounded like a gunshot, as soon as I had a safe moment to pull over I then realized it was my sunroof that has busted. I then was able to step out of my car and realized my sunroof had busted from the inside out. I am very thankful that I was able to stay calm, cool, and collective. I couldn't imagine if the pull of my sunroof from inside the call had been opened. It would have defiantly caused a hazard not only to myself but to other passengers and drivers on the highway.
(NHTSA ID Number: 10671663, Date of Incident: 01/11/2015)

2013 Hyundai Veloster:  I was driving, doing approx 50 miles per hour when I heard a pop and then it started to rain glass from my panoramic sunroof that was shattering all over me.  I had glass in my hair, cuts on my forehead and I have a huge lump on the top of my head from where I was hit in the head with a bigger piece of glass.  Went to the hospital to make sure I didn't have a concussion, which I do not, however, I am very sore from my neck up to the top of my head.  Brought the car to the Hyundai dealer and the service adviser acted surprised that this had happened and said to contact my insurance company to file a complaint since he stated it couldn't have happened on its own, that something had to have hit it.  How sad it is to come home to see that the 2012 model of my car experienced the same challenge and was under recall and now I am seeing that several other 2013 owners are experiencing the same issue with their sunroof as I am.
(NHTSA ID Number: 10681854, Date of Incident: 02/06/2015)

8

FIRST AMENDED CLASS ACTION COMPLAINT
CASE NO. 8:15-CV-02052-DOC-KES

<u>2013 Hyundai Santa Fe</u>:  I was driving about 45 mph on an open road, little to no traffic. The sunroof in my Santa Fe spontaneously exploded. We heard a very loud bang. A large piece of glass flew up and out of my car. Several small pieces of glass fell into the car, on me and my 9 year old daughter (who was in the backseat/driver side). The falling glass ranged from slivers to pea sized to larger than 2 inches. The glass continued to fall into the car. I closed the sunshade on the sunroof to try to keep the rest of the falling glass off of us. I was only about 1/2 mile from home. I drove home and parked in my garage. The panoramic sunroof has 2 pieces of glass. The entire front panel was shattered, and had a large hole just to the right of center. This was after 6pm. I called the Hyundai dealership first thing the next morning. The service person I spoke to stated this was the 2nd exploding sunroof they have seen this month. I had the car towed to the dealership. When we got to the dealership the rest of the sunroof had shattered and fallen into the car. The car was filled with glass. I had 2 small glass slivers in my hand that I easily removed. I have a small glass sliver in my chin still. My daughter has a few small scratches on her stomach (she was wearing a cropped sports top). (NHTSA ID Number: 10693694, Date Complaint Filed: 03/11/2015)

<u>2013 Hyundai Sonata</u>:  I was on my way into work driving down the highway and out of no where a hear this very loud explosion like a gun going off and thought someone had shot me. I then felt things falling on my head and lap, so I pulled over to the shoulder of the highway and turned the inside light on and saw shattered glass and then looked up and my sunroof was gone. I drove to the dealership and got out of my car and I could see with the glass remaining on the back part of the sunroof that the piece of glass was going outward, just like if something blew up. This could have caused me to be injured or have a accident. Please look into this matter before someone really gets hurt. (NHTSA ID Number: 10695054, Date Complaint Filed: 03/18/2015)

<u>2013 Hyundai Tucson</u>:  Hyundai panoramic sunroof exploded Father's Day 2015, we were traveling westbound on Hwy 70 from Little Rock to Hot Springs AR around 10:45 am. It was not excessively hot, and it was a bit overcast. There was no noise alerting us to the impending explosion. And that explosion sounded just like a gunshot at very close range. Thankfully, we had the shade closed when the forward portion of the sunroof literally blew up, sending a thousand glass shards thru the air, onto the shade, and bounding off the top and rear of the car...we were able to pull over and remove much of the glass shards, but the glass still clinging to the frame of

9

the sunroof was curved upward, like to had literally blown "up"....I went online and saw many pictures and stories of this same thing happening to others, throughout the country. The safety ramifications seem more than enough to warrant some sort of investigation and action by the Hyundai company.
(NHTSA ID Number: 10702749, Date Complaint Filed: 03/30/2015)

2014 Hyundai Santa Fe:  I was driving down the highway at approximately 75 miles per hour on a sunny day, and I suddenly heard this huge "pop" like someone had just shot my window out with a gun. At first I thought I blew out a tire but got out and checked and there was no damage there. I kept hearing wind whooshing through the cabin of my car, and finally I opened up the fabric cover of my sunroof and my sunroof was completely blown out! There were no trucks with rocks or any other means by which this sunroof could have shattered like that. It just plain blew out on its own. I got home and checked on my computer and sure enough, there were numerous complaints about Hyundais that had defective sunroofs that just blew out for no reason.
(NHTSA ID Number: 10725834, Date Complaint Filed: 06/17/2015)

2013 Hyundai Veloster:  I was driving 70mph in the high-speed lane on I-40 eastbound on 7/7/15 at 7:10pm when my sunroof exploded without warning. There were no cars in front of me. My sunroof was closed, and the windows were closed.  The weather was sunny and ~90 degrees. The explosion came as a sudden thunderous boom causing shards of glass to fall into my vehicle onto my head and down my back, causing only a few minor cuts.  I was so alarmed as the sunroof exploded that I swerved onto the berm of the highway. I noticed that the vehicles behind me also swerved causing near accidents, as I suspect shards of glass also flew backward at their vehicle after the explosion.  I put on my flashers and pulled my vehicle to the right berm of the highway to calm myself.  The other cars did not stop.  Since the vehicle was still in driving condition, I drove the vehicle home slowly with my emergency flashers on and called my insurance company. There are currently no recalls on 2013 Hyundai Velosters.  However there was a recall (#12v568000) for 2012 Velosters for the same issue.  There are also blogs on the web that talk about this issue lingering with 2013 models, however, no action has been taken by Hyundai to proactively address this enormous safety concern. I hope this notification to NHTSA helps drive some action and forces Hyundai to recall these sunroofs considering how this could have easily caused severe injury and/or death at such high speeds.

FIRST AMENDED CLASS ACTION COMPLAINT
CASE NO. 8:15-CV-02052-DOC-KES

(NHTSA ID Number: 10732662, Date Complaint Filed: 07/08/2015)

2015 Hyundai Veloster:  I was driving the 2015 Veloster Turbo on a straight portion of the freeway between 65 and 70 miles per hour with the sunroof open. The sunroof shattered unexpectedly, and glass flew both into the car, and out behind the car. The glass landed on my arms, head, lap, and went down my back as well. I swerved to the right as a reflex to being startled, and then overcorrected and went left past my lane. I did not hit any cars, however. Glass kept falling on to the freeway, into the car, and on my head for a few more minutes as I made my way to the dealership service department. Once at the dealership, I inspected the damage and found that the glass shards had made many cuts into the paint toward the back half of the car. The dealership later had me circle these scratched with a wax pen. Initially, I was going to be charged a diagnostic fee, but when I mentioned that this had been an issue for previous year models, another service consultant jumped in and told me it would all be taken care of under warranty. (NHTSA ID Number: 10808854, Date Complaint Filed: 12/05/2015)

2016 Hyundai Santa Fe Sport:  The panoramic sunroof spontaneously shattered while driving at night on the highway at about 70mph - the sound was like a gunshot inside the car - this is a Santa Fe Sport 2016 model that I bought on July 5 2015.
(NHTSA ID Number: 10809600, Date Complaint Filed: 12/11/2015)

## Hyundai's Knowledge of the Defect

25.   Hyundai has long known that its sunroofs are prone to spontaneous and dangerous shattering.

26.   On October 2, 2012, NHTSA launched an investigation into the 2012 Hyundai Veloster after receiving numerous reports and complaints of spontaneously shattering panoramic sunroofs.  Numerous injuries from falling glass were noted by NHTSA in the investigation and that such incidents pose a risk of personal injury or vehicle crash.

27.   On December 6, 2012, Hyundai notified NHTSA that it would conduct a safety recall.  In reporting the defect, Hyundai posited that the Veloster panoramic sunroof assembly may have been weakened during installation at the factory.  If the assembly was weakened at the factory, according to Hyundai, the panoramic glass panel may break while the vehicle is in motion, leading to personal injury or a vehicle crash.

FIRST AMENDED CLASS ACTION COMPLAINT
CASE NO. 8:15-CV-02052-DOC-KES

28.  Hyundai inexplicably chose to limit its recall to only a small subset of its vehicles with panoramic sunroofs:  its recall covers only 2012 Veloster vehicles produced from July 4, 2011 through October 31, 2011.  However, owners of various model year Sonata vehicles, Tucson vehicles, non-recalled Veloster vehicles, Santa Fe vehicles, Santa Fe Sport vehicles, and Elantra GT vehicles have all reported spontaneously shattering sunroofs.   By limiting its recall to certain 2012 Veloster vehicles, Hyundai was only required to test and potentially repair only about 19,600 vehicles out of the hundreds of thousands implicated by the sunroof defect.

29.  In December 2012, KATRI launched its own investigation into spontaneous sunroof explosions after receiving numerous complaints of incidents occurring in South Korea since 2011.

30.  KATRI did not limit the scope of its investigation to the 2012 Veloster, instead investigating shattering panoramic sunroofs in all Class Vehicles (as well as in other manufacturers' vehicles).  Over ensuing years, Hyundai was notified and kept apprised of KATRI's investigation through direct contact as well as through various trade organizations of which Hyundai was a member.  At a hearing in November 2013 before Korea's Ministry of Land, Infrastructure, and Transport ("MOLIT"), KATRI presented its findings and allowed automakers to respond.  Representatives from Hyundai as well as other manufacturers were present at this meeting.  According to KATRI, its investigation confirmed that the panoramic sunroofs are prone to shattering, due in part to the ceramic paint area being compromised.

31.  Given the speed and frequency with which the panoramic sunroofs in Class Vehicles shatter, it is likely that Hyundai knew of the danger of shattering before it first began selling and leasing the vehicles.  Hyundai studies and tracks potential vehicle defects through exhaustive pre-release testing.

32.  Hyundai also uses a variety of means to determine how its vehicles are performing in the days, weeks, and months after they are sold.  Hyundai collects information from drivers and dealerships, through, among other things, complaints,

FIRST AMENDED CLASS ACTION COMPLAINT
CASE NO. 8:15-CV-02052-DOC-KES

warranty claims, replacement parts data, and other aggregated data sources.  That data is particularly likely to trigger awareness of a problem within Hyundai where, as here, the problem affects driver and passenger safety, occurs relatively early in the life of the vehicle, and substantially detracts from customer satisfaction.  Although Hyundai alone knows exactly what its information revealed in 2011 and 2012, the rapidity with which the panoramic sunroofs have failed and the vociferous nature of the complaints from frightened drivers suggest that Hyundai would have become aware of and begun investigating the problem after just a few initial reports.

33.   One source of corroborating publicly available information is the database of driver complaints on the NHTSA website, which Hyundai monitors in the ordinary course of its business for emerging problems with its vehicles.  A survey of those complaints shows that drivers began reporting the problem as early as 2012, and that by then, Hyundai dealerships and Hyundai itself were aware of the problem.  The NHTSA database tends to contain far fewer complaints than Hyundai's internal databases, however, since most drivers first react by communicating with their dealership or Hyundai corporate, rather that the government, and many drivers do not even know NHTSA exists or accepts driver complaints.  Hyundai also participates in discussions, meetings, conferences of international rule-making bodies, and international trade organizations where the defects associated with the Class Vehicles and their panoramic sunroofs were and are the topic of discussion and reform.

### The Costs and Dangers Posed to Occupants of Class Vehicles

34.   As NHTSA, KATRI, and various manufacturers have acknowledged, the sudden and spontaneous shattering of a sunroof endangers drivers, passengers, and others on the road.  Panoramic sunroofs, which are intended to last the life of the vehicle, are also often an expensive upgrade costing thousands of dollars.  The repair of a shattered panoramic sunroof also typically costs over one thousand dollars and can be an elaborate procedure, often requiring that drivers give up their vehicles for a week or more.  A reasonable person considering whether to purchase or lease a Class Vehicle who learned

about the propensity of the panoramic sunroofs to shatter would find these costs material, and would opt against paying the thousands of dollars for such an upgrade or simply forego purchasing the vehicle altogether.

35.  When Hyundai sunroofs shatter, they make a sudden and extremely loud noise, and often send shards of glass raining down onto the driver and passengers.  Drivers report that the falling shards of glass have cut them and their passengers and have also caused damage to the interior of their vehicles.  Drivers have also reported a number of near-miss accidents that have occurred after they were startled by the shattering.

36.  Both Hyundai and other manufacturers acknowledge the danger posed by shattering sunroofs.  Hyundai initiated the "safety recall" referenced above, acknowledging that the shattering "relates to motor vehicle safety," including by posing a risk of cutting vehicle occupants.  In connection with the recall, NHTSA wrote that the breaking of the sunroof could lead "to personal injury or a vehicle crash."  Likewise, Volkswagen initiated a safety recall for shattering panoramic sunroofs, and it too acknowledged that drivers "could be injured by falling glass," and that "[i]f the glass panel were to break while the vehicle is in motion, it could cause driver distraction, increasing the risk of a crash."[2]  In connection with that recall, NHTSA wrote that "should the sunroof's glass break while the vehicle is in use, the falling glass could cut and injure the driver or passengers [and] could also distract the driver, increasing the risk of a crash."

37.  Like NHTSA, KATRI recognized the danger posed by shattering panoramic sunroofs. KATRI concluded that the sudden shattering may cause "abrasions due to shattered glass" and also cause the "risk of secondary accidents."

_____

[2] Jenna Reed, *VW Recalls Certain Beetle Models Over Potential Panoramic Sunroof Issue*, glassBYTEs.com (Dec. 11, 2014), http://www.glassbytes.com/2014/12/vw-recalls-certain-beetle-models-over-potential-panoramic-sunroof-issue/; Volkswagen of America, Inc., *Volkswagen Issues Voluntary Recall* (Dec. 7, 2014), https://media.vw.com/release/856/.

FIRST AMENDED CLASS ACTION COMPLAINT
CASE NO. 8:15-CV-02052-DOC-KES

## Hyundai Breached its Warranty Obligations

38.   Hyundai provides a 5-year/60,000-mile new vehicle limited warranty, which it claims: "Covers repair or replacement of any component manufactured or originally installed by Hyundai that is defective in material or factory workmanship, under normal use and maintenance."  While certain parts like radio and audio systems, paint, battery and wear items, are excluded from this coverage, the panoramic sunroofs are not excluded. Hyundai claims: "America's Best Warranty does more than give you peace of mind, it's a commitment from Hyundai to maintain a high degree of quality, dependability and reliability."

39.   Hyundai is obligated to repair the sunroofs at issue in this lawsuit under its warranty because the defective sunroofs suffer from a defect in material, workmanship, or design—whether due to poor glass quality, an improper manufacturing process, or an improper assembly process.  KATRI has concluded, for instance, that the ceramic material that Hyundai adds to the glass during the manufacturing process compromises the sunroof glass material and is at least partly responsible for spontaneous sunroof shattering.  In addition, Hyundai has posited in communications with NHTSA that sunroof assemblies may be weakened during installation at the factory.

40.   Alternatively, even if the sunroof is ultimately determined to be solely a design defect, Hyundai would still be obligated to repair the sunroofs under its warranty because (i) design defects are not specifically excluded from warranty coverage, (ii) it has been Hyundai's and the automotive industry's practice to repair design defects under warranty, and (iii) the warranty is a contract of adhesion, under which any ambiguities of coverage should be construed against Hyundai.

41.   Instead of honoring its warranty obligations, however, Hyundai has employed a concerted practice to avoid paying for sunroof replacements.  Even though it knows that its panoramic sunroofs are prone to spontaneous shattering, Hyundai has consistently told drivers that their sunroofs have performed properly and denies warranty coverage. Hyundai's dealers also instruct customers that their sunroof failures will not be covered

FIRST AMENDED CLASS ACTION COMPLAINT
CASE NO. 8:15-CV-02052-DOC-KES

under warranty.  Instead, when customers call to complain, Hyundai denies that sunroof failures are the result of a systemic defect.

42.  As a result of Hyundai's systematic denials of warranty coverage for sunroof failures, Plaintiffs and Class Members are required to incur substantial repair bills, make claims under their automotive insurance policies, and pay for resulting insurance deductibles when the sunroofs of their vehicles spontaneously shatter.

**Hyundai's Concealment of the Defect and Its Refusal to Warn Owners and Lessees**

43.  Despite its knowledge of the fact that the defective panoramic sunroofs in Class Vehicles endanger drivers, passengers, and others on the road, Hyundai continues to conceal the problem from drivers and potential customers alike.  Hyundai has not warned consumers at the point of sale or lease (nor instructed its dealerships to do so), and has made no effort to alert Hyundai drivers to the sunroofs' risk of suddenly shattering.  As a result, most drivers are unaware that they are driving unsafe vehicles and consumers are deprived of the right to make informed purchasing decisions taking into account the available information about the propensity of the panoramic sunroofs to spontaneously shatter, the danger posed, and the cost of repair.

44.  As Hyundai knows, the problem is not reasonably discoverable by consumers unless they experience the shattering first hand, and thus, are exposed to the attendant safety risks.

45.  While vehicles with similar sunroof defects have been the subject of voluntary safety recalls—which by law requires notification to owners of lessees of the danger—Hyundai continues to profit from the sale and lease of defective vehicles to unwitting consumers and continues to decline assistance with repair costs even for Class Vehicles that remain within warranty.

46.  Given the severity and the safety risks posed by the sunroof defect, Hyundai either should not have sold or leased Plaintiffs and class members their vehicles or it should have prominently disclosed—both in a written disclosure to be acknowledged in writing by Plaintiffs and class members and through an oral disclosure to be given by

Hyundai's authorized dealerships—that the vehicles' sunroofs are prone to spontaneously shatter.

### PLAINTIFFS' EXPERIENCES

#### Billy Glenn

47.    Plaintiff Billy Glenn purchased a new 2014 Hyundai Santa Fe Sport in September 2014, from Eastern Shore Hyundai, an authorized Hyundai dealership located in Daphne, Alabama.   Mr. Glenn's vehicle was equipped with a factory-installed panoramic sunroof.   Mr. Glenn researched the vehicle online, including on Hyundai's website, and he also spoke with dealership personnel about the vehicle before making his purchase.

48.    Mr. Glenn contacted Eastern Shore Hyundai the next day, and contacted HMA on February 6, 2015.  Both the dealership and HMA refused to cover the costs of repair.  Mr. Glenn filed a claim with his insurance company, which required him to pay a $100 deductible in connection with the sunroof repair and replacement.

49.    In March 2015, the new panoramic sunroof also shattered, again without warning and with no indication that an object had made contact with it.  Once again, Mr. Glenn contacted the dealership and HMA.  Again, both the dealership and HMA refused to cover the costs of repair.  Mr. Glenn filed another insurance claim, and had to pay another $100 deductible for the repair and replacement of his vehicle's sunroof.  Mr. Glenn also incurred rental car costs while his vehicle was being repaired, which have not been reimbursed by Hyundai.

50.    Had Hyundai adequately disclosed the panoramic sunroof defect, Mr. Glenn would not have purchased his vehicle, or he would have paid substantially less for it.  His vehicle remains within the scope of Hyundai's new vehicle limited warranty.

#### Kathy Warburton

51.    Plaintiff Kathy Warburton purchased a new 2014 Hyundai Santa Fe in September 2014 from Garlyn Shelton Hyundai, now called Brazos Valley Hyundai, an authorized Hyundai dealership located in Bryan, Texas.  Ms. Warburton's vehicle was

equipped with a factory-installed panoramic sunroof.  Ms. Warburton researched the 2014 Hyundai Santa Fe before her purchase, including through reading the Consumer Reports review of the vehicle and viewing Hyundai's website, and by asking questions of dealership personnel before buying the vehicle.

52.  In December 2015, when the vehicle had approximately 33,000 miles on the odometer, Ms. Warburton was driving with her daughter when she heard a loud sound and the panoramic sunroof shattered, covering her and her daughter with glass.  The sunroof shattered without warning and without any indication that an object had made contact with it beforehand.

53.  Ms. Warburton contacted HMA, who refused to cover the costs of the repair. Ms. Warburton filed a claim with her insurance company, which required her to pay a $1,000 deductible in connection with the sunroof repair.  Ms. Warburton also incurred rental car costs of $296 for a period of three weeks while her vehicle was being repaired, which have not been reimbursed by Hyundai.

54.  Had Hyundai adequately disclosed the panoramic sunroof defect, Ms. Warburton would not have purchased her vehicle, or she would have paid substantially less for it.  Her vehicle remains within the scope of Hyundai's new vehicle limited warranty.

### Kim Fama

55.  Plaintiff Kim Fama purchased a new 2013 Hyundai Elantra GT in October 2013 from Salem Ford Hyundai, an authorized Hyundai dealership located in Salem, New Hampshire.  Ms. Fama's vehicle was equipped with a factory-installed panoramic sunroof. Ms. Fama researched the vehicle before her purchase, including by speaking with dealership personnel.

56.  In July 2015, when the vehicle had approximately 17,000 miles on the odometer, Ms. Fama was driving when she heard a loud sound and the panoramic sunroof spontaneously shattered.  She felt the sensation of air rushing into the vehicle and glass fell onto the front seats.  The sunroof shattered without warning and with no indication

FIRST AMENDED CLASS ACTION COMPLAINT
CASE NO. 8:15-CV-02052-DOC-KES

1    that an object had made contact with it beforehand.

2        57.    Ms. Fama contacted HMA and Salem Ford Hyundai, who refused to cover

3 the cost of the repair. She was without her vehicle for three weeks while parts were

4 ordered and installed.

5        58.    Had Hyundai adequately disclosed the panoramic sunroof defect, Ms. Fama

6 would not have purchased her vehicle, or she would have paid substantially less for it. Her

7 vehicle remains within the scope of Hyundai's new vehicle limited warranty.

8                                      **Corinne Kane**

9        59.    Plaintiff Corinne Kane purchased a 2011 Hyundai Tucson in November 2011

10 through a vehicle broker based in California. Ms. Kane's vehicle was equipped with a

11 factory-installed panoramic sunroof. Ms. Kane researched the vehicle prior to her

12 purchase, including by viewing Hyundai's website, looking at safety ratings, and speaking

13 with personnel at a local Hyundai dealership.

14        60.    In March 2015, when the vehicle had approximately 50,000 miles on the

15 odometer, Ms. Kane was driving when she heard a loud sound and the open panoramic

16 sunroof shattered, covering the rear panel of the sunroof in broken glass. The sunroof

17 shattered without warning and with no indication that an object had made contact with it

18 beforehand.

19        61.    Ms. Kane contacted HMA, who had the vehicle towed to Vancouver

20 Hyundai. But HMA as well as the dealership refused to cover the cost of the repair. Ms.

21 Kane instead filed a claim with her insurance company, which required her to pay a $500

22 deductible in connection with the sunroof repair. Ms. Kane also incurred rental car costs

23 while her vehicle was being repaired, which have not been reimbursed by Hyundai. Ms.

24 Kane subsequently sold her 2011 Hyundai Tucson because she felt unsafe driving it.

25        62.    Had Hyundai adequately disclosed the panoramic sunroof defect, Ms. Kane

26 would not have purchased her vehicle, or she would have paid substantially less for it.

27                           **CLASS ACTION ALLEGATIONS**

28        63.    Pursuant to Rule 23 of the Federal Rules of Civil Procedure, Plaintiffs bring

FIRST AMENDED CLASS ACTION COMPLAINT
CASE NO. 8:15-CV-02052-DOC-KES

1  this action on behalf of themselves and the following proposed nationwide class, within

2  which the term "Class Vehicle" is defined to include all of the models below that are

3  equipped with factory-installed panoramic sunroofs:

4       a.     2013-2016 model year Hyundai Santa Fe Sport vehicles;

5       b.     2013-2016 model year Hyundai Santa Fe vehicles;

6       c.     2013-2016 model year Hyundai Elantra GT vehicles;

7       d.     2011-2016 model year Hyundai Sonata vehicles;

8       e.     2011-2016 model year Hyundai Tucson vehicles;

9       f.     2011-2016 model year Hyundai Veloster vehicles;

10  Nationwide Class:

11  *All persons who purchased or leased a Class Vehicle in the United States.*

12       64.     In the alternative, Plaintiffs seek to represent state classes defined as follows:

13  Alabama Class:

14  *All persons who purchased or leased a Class Vehicle in Alabama.*

15  New Hampshire Class:

16  *All persons who purchased or leased a Class Vehicle in New Hampshire.*

17  Texas Class:

18  *All persons who purchased or leased a Class Vehicle in Texas.*

19  Washington Class:

20  *All persons who purchased or leased a Class Vehicle in Washington.*

21       65.     Excluded from the proposed class(es) is Hyundai; any affiliate, parent, or

22  subsidiary of Hyundai; any entity in which Hyundai has a controlling interest; any officer,

23  director, or employee of Hyundai; any successor or assign of Hyundai; anyone employed

24  by counsel in this action; any judge to whom this case is assigned, his or her spouse;

25  members of the judge's staff; and anyone who purchased a Class Vehicle for the purpose

26  of resale.

27       66.     Members of the proposed class(es) are readily ascertainable because the class

28  definition is based upon objective criteria.

67.     **Numerosity**. Hyundai sold many thousands of Class Vehicles, including a substantial number in California, Alabama, New Hampshire, Texas, and Washington. Members of the proposed class(es) likely number in the thousands and are thus too numerous to practically join in a single action. Class members may be notified of the pendency of this action by mail, supplemented by published notice (if deemed necessary or appropriate by the Court).

68.     **Commonality and Predominance**. Common questions of law and fact exist as to all proposed class members and predominate over questions affecting only individual class members. These common questions include:

a.     Whether the sunroofs in Class Vehicles have a propensity to spontaneously shatter;

b.     Whether Hyundai knew or should have known that its sunroofs have a propensity to spontaneously shatter, and if so, when it discovered this;

c.     Whether the knowledge of this propensity would be important to a reasonable person, because, among other things, it poses an unreasonable safety hazard;

d.     Whether Hyundai failed to disclose and concealed the existence of the sunroofs' propensity to spontaneously shatter from potential customers;

e.     Whether Hyundai has breached its express warranty obligations;

f.     Whether the Court may enter an injunction requiring Hyundai to notify owners and lessees about the sunroofs' propensity to spontaneously shatter;

g.     Whether the Court may enter an injunction requiring Hyundai to cease its practice of replacing shattered panoramic sunroofs with equally defective replacement sunroofs;

h.     Whether Hyundai's conduct, as alleged herein, violates the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301, *et seq.*

i.     Whether Hyundai's conduct, as alleged herein, violates Cal. Bus. & Prof. Code § 17200, *et seq.*; and

FIRST AMENDED CLASS ACTION COMPLAINT
CASE NO. 8:15-CV-02052-DOC-KES

j.      Whether Hyundai's conduct, as alleged herein, violates Cal. Civ. Code § 1750, *et seq.*

69.     **Typicality**. Plaintiffs' claims are typical of the claims of the proposed class(es). Plaintiffs and the members of the proposed classes all purchased or leased Class Vehicles with panoramic sunroofs that have a propensity to spontaneously shatter, giving rise to substantially the same claims. As illustrated by class member complaints, some of which have been excerpted above, each vehicle model included in the proposed class definition has suffered from the same sunroof defect that Plaintiffs are complaining about.

70.     **Adequacy**. Plaintiffs are adequate representatives of the proposed classes because their interests do not conflict with the interests of the members of the classes they seek to represent. Plaintiffs have retained counsel who are competent and experienced in complex class action litigation, and will prosecute this action vigorously on class members' behalf.

71.     **Superiority**. A class action is superior to other available means for the fair and efficient adjudication of this dispute. The injury suffered by each class member, while meaningful on an individual basis, is not of such magnitude as to make the prosecution of individual actions against Hyundai economically feasible. Even if class members themselves could afford such individualized litigation, the court system could not. In addition to the burden and expense of managing many actions arising from the defective sunroofs, individualized litigation presents a potential for inconsistent or contradictory judgments. Individualized litigation increases the delay and expense to all parties and the court system presented by the legal and factual issues of the case. By contrast, a class action presents far fewer management difficulties and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a single court.

72.     In the alternative, the proposed class(es) may be certified because:

a.      the prosecution of separate actions by the individual members of the proposed class(es) would create a risk of inconsistent adjudications, which could establish incompatible standards of conduct for Hyundai;

FIRST AMENDED CLASS ACTION COMPLAINT
CASE NO. 8:15-CV-02052-DOC-KES

b.  the prosecution of individual actions could result in adjudications, which as a practical matter, would be dispositive of the interests of non-party class members or which would substantially impair their ability to protect their interests; and

c.  Hyundai has acted or refused to act on grounds generally applicable to the proposed class(es), thereby making appropriate final and injunctive relief with respect to the members of the proposed class(es) as a whole.

## CHOICE OF LAW ALLEGATIONS

73.  The State of California has sufficient contacts to the conduct alleged herein such that California law may be uniformly applied to the claims of the proposed Nationwide Class.

74.  Hyundai does substantial business in California, where it maintains over 50 authorized dealerships; Hyundai's U.S. headquarters are located in California; and a significant portion of the proposed Nationwide Class is located in California.

75.  In addition, the conduct that forms the basis for each and every class member's claims against Hyundai emanated from Hyundai's U.S. headquarters in Fountain Valley, California, where, among other things, Hyundai receives customer complaints, plans its communications with U.S. customers, plans its communications with authorized U.S. dealerships, analyzes U.S. warranty data, and develops U.S. warranty policy.  The decision not to inform consumers or authorized dealerships of the sunroof defect was made in California, as was the decision to systematically deny warranty coverage for repairs that were necessitated by the sunroof defect.

76.  The State of California also has the greatest interest in applying its law to class members' claims.  Its governmental interests include not only an interest in compensating resident consumers under its consumer protection laws, but also what the State has characterized as a "compelling" interest in using its laws to regulate a resident corporation and preserve a business climate free of fraud and deceptive practices. *Diamond Multimedia Sys. v. Sup. Ct.,* 19 Cal. 4th 1036, 1064 (1999).

FIRST AMENDED CLASS ACTION COMPLAINT
CASE NO. 8:15-CV-02052-DOC-KES

77.     If other states' laws were applied to class members' claims, California's interest in discouraging resident corporations from engaging in the sort of unfair and deceptive practices alleged in this complaint would be significantly impaired.  California could not effectively regulate a company like Hyundai, who does business throughout the United States, if it can only ensure that consumers from one of the fifty states affected by conduct that runs afoul of its laws are compensated.

## TOLLING OF STATUTES OF LIMITATIONS

78.     **Discovery Rule**. Plaintiffs' and class members' claims accrued upon discovery that the panoramic sunroofs installed in their Class Vehicles were prone to spontaneously shattering.  While Hyundai knew, and concealed, the fact that the sunroofs installed in the Class Vehicles have a defect that causes spontaneous shattering, Plaintiffs and class members could not and did not discover this fact through reasonable diligent investigation until after they experienced such spontaneous shattering and learned that the problem was not isolated to their vehicle.

79.     **Active Concealment Tolling**. Any statutes of limitations are tolled by Hyundai's knowing and active concealment of the fact that the panoramic sunroofs installed in the Class Vehicles suffered from an inherent defect.  Hyundai kept Plaintiffs and all class members ignorant of vital information essential to the pursuit of their claim, without any fault or lack of diligence on the part of Plaintiffs.  The details of Hyundai's efforts to conceal its above-described unlawful conduct are in its possession, custody, and control, to the exclusion of Plaintiffs and class members, and await discovery.  Plaintiffs could not reasonably have discovered the fact that the sunroofs installed in their Class Vehicle were defective and that such sunroofs spontaneously shatter.

80.     **Estoppel**.  Hyundai was and is under a continuous duty to disclose to Plaintiffs and all class members the true character, quality, and nature of the panoramic sunroofs installed in the Class Vehicles.  At all relevant times, and continuing to this day, Hyundai knowingly, affirmatively, and actively concealed the true character, quality, and nature of the panoramic sunroofs installed in the Class Vehicles.  The details of Hyundai's

efforts to conceal its above-described unlawful conduct are in its possession, custody, and control, to the exclusion of Plaintiffs and class members, and await discovery. Plaintiffs reasonably relied upon Hyundai's active concealment. Based on the foregoing, Hyundai is estopped from relying upon any statutes of limitation in defense of this action.

81. **Equitable Tolling**. Hyundai took active steps to conceal the fact that it wrongfully, improperly, illegally, and repeatedly manufactured, marketed, distributed, sold, and leased Class Vehicles with defective sunroofs. The details of Hyundai's efforts to conceal its above-described unlawful conduct are in its possession, custody, and control, to the exclusion of Plaintiffs and class members, and await discovery. When Plaintiffs learned about this material information, they exercised due diligence by thoroughly investigating the situation, retaining counsel, and pursuing their claims. Hyundai fraudulently concealed its above-described wrongful acts. Should such tolling be necessary, therefore, all applicable statutes of limitation are tolled under the doctrine of equitable tolling.

## FIRST CAUSE OF ACTION

**Unlawful, Unfair, and Fraudulent Business Practices**

**Cal. Bus. & Prof. Code § 17200,** *et seq.*

**(Each Plaintiff individually and on behalf of the proposed Nationwide Class)**

82. Plaintiffs re-allege the paragraphs above as if fully set forth herein.

83. Hyundai has violated and continues to violate California's Unfair Competition Law, Cal. Bus. & Prof. Code § 17200, *et seq.*, which prohibits unlawful, unfair, and fraudulent business acts or practices.

84. Hyundai's acts and practices, as alleged in this complaint, constitute unlawful, unfair, and fraudulent business practices, in violation of the Unfair Competition Law. In particular, Hyundai sold vehicles to class members even though the panoramic sunroofs installed in those vehicles are defective and pose a safety hazard, and failed to disclose its knowledge of the sunroof defect and its attendant risks at the point of sale or otherwise.

FIRST AMENDED CLASS ACTION COMPLAINT
CASE NO. 8:15-CV-02052-DOC-KES

85.     Hyundai's business acts and practices are unlawful in that they violate the Consumers Legal Remedies Act, Cal. Civil Code § 1750, *et seq.*, and the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301, *et seq.*, for the reasons set forth below

86.     Hyundai's acts and practices also constitute fraudulent practices in that they are likely to deceive a reasonable consumer. As described above, Hyundai knowingly conceals and fails to disclose at the point of sale and otherwise that Class Vehicles' panoramic sunroofs have a propensity to spontaneously shatter, endangering the personal safety of drivers and passengers and requiring immediate repair. Had Hyundai disclosed this fact, Plaintiffs, class members, and reasonable consumers would not have purchased Class Vehicles or would have paid significantly less for them.  Furthermore, Hyundai charges for repairs of Plaintiffs' and class members' panoramic sunroofs without disclosing that the problem is widespread and that the repairs do not address the root cause of the shattering.

87.     Hyundai's conduct also constitutes unfair business practices for at least the following reasons:

a.     The gravity of harm to Plaintiffs and the proposed class from Hyundai's acts and practices far outweighs any legitimate utility of that conduct;

b.     Hyundai's conduct is immoral, unethical, oppressive, unscrupulous, or substantially injurious to Plaintiffs and the members of the proposed class; and

c.     Hyundai's conduct undermines or violates the stated policies underlying the Consumers Legal Remedies Act and the Magnuson-Moss Warranty Act—to protect consumers against unfair and sharp business practices and to promote a basic level of honesty and reliability in the marketplace.

88.     As a direct and proximate result of Hyundai's business practices, Plaintiffs and the proposed class members suffered injury in fact and lost money or property, because they purchased and paid for vehicles and upgrades that they otherwise would not have, or in the alternative, would have paid less for.

FIRST AMENDED CLASS ACTION COMPLAINT
CASE NO. 8:15-CV-02052-DOC-KES

89.     Plaintiffs and the proposed Nationwide Class members are entitled to equitable relief, including an order directing Hyundai to disclose the existence of the defect to drivers and consumers and to provide restitution and disgorgement of all profits paid to Hyundai as a result of its unfair, deceptive, and fraudulent practices, reasonable attorneys' fees and costs, and a permanent injunction enjoining such practices.

## SECOND CAUSE OF ACTION

**Violation of the Consumers Legal Remedies Act**

**Cal. Civ. Code § 1750,** *et seq.*

**(Plaintiff Billy Glenn individually and on behalf of the proposed Nationwide Class)**

90.     Plaintiff re-alleges the paragraphs above as if fully set forth herein.

91.     Hyundai is a "person" within the meaning of Civil Code §§ 1761(c) and 1770, and has provided "goods" within the meaning of Civil Code §§ 1761(b) and 1770.

92.     Plaintiff and members of the proposed Nationwide Class are "consumers" within the meaning of Civil Code §§ 1761(d) and 1770, and have engaged in a "transaction" within the meaning of Civil Code §§ 1761(e) and 1770.

93.     Hyundai's acts and practices, which were intended to result and which did result in the sale of Class Vehicles with defective panoramic sunroofs, violate § 1770 of the Consumers Legal Remedies Act for at least the following reasons:

a.     Hyundai represents that its vehicles and panoramic sunroofs had characteristics, uses, or benefits which they do not have;

b.     Hyundai advertises its goods with intent not to sell them as advertised;

c.     Hyundai represents that its vehicles and panoramic sunroofs are of a particular standard, quality, or grade when they are not;

d.     Hyundai represents that a transaction conferred or involved rights, remedies, or obligations which they do not; and

e.     Hyundai represents that its goods have been supplied in accordance with a previous representation when they have not.

94.     As described above, Hyundai sold vehicles to class members even though the

27

FIRST AMENDED CLASS ACTION COMPLAINT
CASE NO. 8:15-CV-02052-DOC-KES

panoramic sunroofs installed in those vehicles are defective and pose a safety hazard,  and failed to disclose its knowledge of the sunroof defect and its attendant risks at the point of sale or otherwise.  Hyundai intended that Plaintiff and the members of the proposed class rely on this omission in deciding to purchase their vehicles and sunroofs.

95.    Had Hyundai adequately disclosed the defect, Plaintiff, members of the proposed class, and reasonable consumers would not have purchased or would have paid less for their vehicles and sunroofs.  Furthermore, Hyundai charges for repairs of Plaintiffs' and class members' panoramic sunroofs without disclosing that the problem is widespread and that the repairs do not address the root cause of the shattering.

96.    Pursuant to the provisions of Cal. Civ. Code § 1782(a), Plaintiff Glenn sent a notice letter to Honda to provide them with the opportunity to correct their business practices.

97.    Pursuant to California Civil Code § 1780, Plaintiff seeks an order enjoining Hyundai from the unlawful practices described above and a declaration that Hyundai's conduct violates the Consumers Legal Remedies Act, as well as actual and punitive damages and attorneys' fees and costs.

## THIRD CAUSE OF ACTION

### Violation of State Consumer Protection Statutes

### (Each Plaintiff individually and on behalf of the statewide classes)

98.    Plaintiffs re-allege the paragraphs above as if fully set forth herein.

99.    In the event California law does not apply to the claims of all Plaintiffs and class members, Plaintiffs bring this claim in the alternative under the consumer protection laws of the states in which the dealership or entity selling the Class Vehicles in question was located.

100.    Plaintiffs and class members are consumers who bought or leased Class Vehicles equipped with optional panoramic sunroofs for personal, family, or household purposes.

101.    Class Vehicles and the optional panoramic sunroofs installed in Class

Vehicles are goods or merchandise, and Plaintiffs' purchases and leases of Hyundai vehicles with the optional panoramic sunroofs constitute transactions. Hyundai's sale and leasing of Class Vehicles and the optional panoramic sunroofs installed in Class Vehicles through its authorized dealers occur in the regular course of Hyundai's business.

102.   Hyundai's acts and practices, as alleged in this complaint, constitute deceptive, unfair, fraudulent, and misleading acts and practices. In particular, Hyundai sold vehicles to class members even though the panoramic sunroofs installed in those vehicles are defective and pose a safety hazard and failed to disclose its knowledge of the sunroof defect and its attendant risks at the point of sale or otherwise. Furthermore, Hyundai charges for repairs of Plaintiffs' and class members' panoramic sunroofs without disclosing that the problem is widespread and that the repairs do not address the root cause of the shattering. Hyundai thus represented that its goods, merchandise, and services had characteristics, uses, benefits, or qualities that they did not have, and that they were of a particular standard, quality, or grade when they were not.

103.   Hyundai concealed, suppressed, or omitted material facts with the intent that Plaintiffs and class members rely upon such concealment, suppression, or omission. Hyundai's acts and practices are objectively deceptive and thus likely to deceive a reasonable consumer. As described above, Hyundai knowingly conceals and fails to disclose at the point of sale and otherwise that Class Vehicles' panoramic sunroofs have a propensity to spontaneously shatter, endangering the personal safety of drivers and passengers and requiring immediate repair. Had Hyundai disclosed this fact, Plaintiffs, class members, and reasonable consumers would not have purchased Class Vehicles or would have paid significantly less for them.

104.   Hyundai's course of conduct had an impact on the public interest because the acts were part of a generalized course of conduct affecting numerous consumers, and because the facts Hyundai has concealed involve a matter of public safety.

105.   Hyundai's conduct, which included deception, fraud, false pretenses, and the knowing concealment, suppression, or omission of material facts, caused and resulted in

29

FIRST AMENDED CLASS ACTION COMPLAINT
CASE NO. 8:15-CV-02052-DOC-KES

injury in fact and an ascertainable loss of money or property to Plaintiffs and class members, which injury was foreseeable by Hyundai.  Among other things, Plaintiffs and class members purchased vehicles equipped with panoramic sunroofs they otherwise would not have purchased and paid for unnecessary repairs of shattered sunroofs that did not address the root cause of the shattering.

106.    Hyundai willfully and knowingly engaged in the conduct described above.

107.    Plaintiffs, on behalf of themselves and class members, seek an order enjoining Hyundai from the unlawful practices described herein and requiring Hyundai to notify class members that the panoramic sunroofs in their vehicles are defective and can spontaneously shatter while being driven.

108.    Plaintiffs and the other proposed class members are entitled to legal and equitable relief against Hyundai, including damages, consequential damages, specific performance, attorneys' fees, costs of suit, and other relief as appropriate.

109.    <u>Alabama</u>:  Hyundai's practices, as alleged, were and are in violation of Alabama's Deceptive Trade Practices Act, Ala. Code § 8-19-1 *et seq.*

110.    <u>New Hampshire</u>: Hyundai's practices, as alleged, were and are in violation of the New Hampshire Consumer Protection Act, N.H. Rev. Stat. § 358-A:1 *et seq.*

111.    <u>Texas</u>:  Hyundai's practices, as alleged, were and are in violation of Texas's Deceptive Trade Practices-Consumer Protection Act, Tex. Bus. & Com. Code § 17.41, *et seq.*

112.    <u>Washington</u>:  Hyundai's practices, as alleged, were and are in violation of the Washington Consumer Protection Act, Wash. Rev. Code § 19.86.010, *et seq.*

## **FOURTH CAUSE OF ACTION**

### **Unjust Enrichment**

### **(Each Plaintiff individually and on behalf of the proposed**

### **Nationwide Class or, alternatively, each statewide class)**

113.    Plaintiffs re-allege the paragraphs above as if fully set forth herein.

114.    As described above, Hyundai sold vehicles to class members even though the

FIRST AMENDED CLASS ACTION COMPLAINT
CASE NO. 8:15-CV-02052-DOC-KES

panoramic sunroofs installed in those vehicles are defective and pose a safety hazard, and failed to disclose its knowledge of the sunroof defect and its attendant risks at the point of sale or otherwise.  Furthermore, Hyundai charges for repairs of Plaintiffs' and class members' panoramic sunroofs without disclosing that the problem is widespread and that the repairs do not address the root cause of the shattering.

115.   As a result of its fraudulent acts and omissions related to the defective sunroofs, Hyundai obtained monies which rightfully belong to Plaintiffs and the proposed Nationwide Class members to the detriment of Plaintiffs and the proposed Nationwide Class members.

116.   Hyundai appreciated, accepted, and retained the non-gratuitous benefits conferred by Plaintiffs and the proposed Nationwide Class members, who, without knowledge of the defect, paid a higher price for their vehicles and sunroofs than those vehicles and options were worth. Hyundai also received monies for vehicles and sunroofs that Plaintiffs and the proposed Nationwide Class members would not have otherwise purchased.

117.   It would be inequitable and unjust for Hyundai to retain these wrongfully obtained profits.

118.   Hyundai's retention of these wrongfully-obtained profits would violate the fundamental principles of justice, equity, and good conscience.

119.   Plaintiffs and the proposed Nationwide Class are entitled to restitution of the profits unjustly obtained, plus interest.

## <u>FIFTH CAUSE OF ACTION</u>

**Violation of the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301, *et seq*.**

**(Plaintiff Billy Glenn individually and on behalf of**

**the proposed Nationwide Class or, alternatively, the Alabama Class)**

120.   Plaintiff realleges the paragraphs above as if fully set forth herein.

121.   Plaintiff and the other members of the class are "consumers" within the meaning of 15 U.S.C. § 2301(3).

FIRST AMENDED CLASS ACTION COMPLAINT
CASE NO. 8:15-CV-02052-DOC-KES

122.   Hyundai is a "supplier" and "warrantor" within the meanings of sections 2301(4)-(5).

123.   Class Vehicles are "consumer products" within the meaning of section 2301(1).

124.   Hyundai provided a written warranty under section 2301(6) to all members of the class under which Hyundai warranted that the Class Vehicles would be free from defects for five years or 60,000 miles, whichever occurs first.

125.   Hyundai is required to repair or replace panoramic sunroofs that spontaneously shatter during the warranty period at no charge.

126.   Plaintiff and other class members own Class Vehicles that experienced sunroof shattering during the period of warranty coverage.

127.   Hyundai breached its new vehicle limited warranty by failing to repair or replace the sunroofs at no charge in Plaintiff's and other class members' Class Vehicles.

128.   Hyundai's breach of warranty has deprived Plaintiff and the other members of the class of the benefit of their bargain.

129.   The amount in controversy of the Plaintiff's individual claim meets or exceeds the sum or value of $25.  In addition, the amount in controversy meets or exceeds the sum or value of $50,000 (exclusive of interest and costs) computed on the basis of all claims to be determined in this suit.

130.   Hyundai has been afforded reasonable opportunity to cure its breach of warranty.  Pursuant to the provisions of 15 U.S.C. § 2310(e), on December 11, 2015, Plaintiff Billy Glenn, on behalf of himself and class members, sent notice to Hyundai's principal place of business to provide it with reasonable opportunity to correct its business practices and cure its breach of warranties under the Magnuson-Moss Warranty Act. Hyundai has not cured the breach of warranty described above and continues to deny warranty coverage when class members present their vehicles for repair after their Class Vehicles' panoramic sunroofs have spontaneously shattered.

131.   In addition, resorting to any informal dispute settlement procedure or

32

FIRST AMENDED CLASS ACTION COMPLAINT
CASE NO. 8:15-CV-02052-DOC-KES

affording Hyundai another opportunity to cure its breach of warranty is unnecessary and futile.  Any remedies available through any informal dispute settlement procedure would be inadequate under the circumstances, as Hyundai has repeatedly failed to disclose the panoramic sunroof defect or provide repairs at no cost, and, as such, has indicated no desire to participate in such a process at this time.  Any requirement under the Magnuson-Moss Warranty Act or otherwise that Plaintiff resorts to any informal dispute settlement procedure or afford Hyundai a reasonable opportunity to cure the breach of warranty described above is excused and/or has been satisfied.

132.   As a direct and proximate cause of Hyundai's warranty breach, Plaintiff and the other members of the class sustained damages and other losses in an amount to be determined at trial.  Hyundai's conduct damaged Plaintiff and the other members of the class, who are entitled to recover damages, specific performance, costs, attorneys' fees, and other appropriate relief.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs request that the Court enter a judgment awarding the following relief:

a.   An order certifying the proposed class(es), and appointing Plaintiffs' counsel to represent the class(es);

b.   An order awarding Plaintiffs and the class members their actual damages, punitive damages, and/or any other form of monetary relief provided by law;

c.   An order awarding Plaintiffs and the class(es) restitution, disgorgement, or other equitable relief as the Court deems proper;

d.   An order requiring Hyundai to adequately disclose and repair the defect panoramic sunroofs;

e.   An order awarding Plaintiffs and the class(es) pre-judgment and post-judgment interest as allowed under the law;

f.   An order awarding Plaintiffs and the class(es) reasonable attorneys' fees and costs of suit, including expert witness fees; and

FIRST AMENDED CLASS ACTION COMPLAINT
CASE NO. 8:15-CV-02052-DOC-KES

1    g.      An order awarding such other and further relief as this Court may deem just

2            and proper.

3                              **JURY DEMAND**

4            Pursuant to Fed. R. Civ. P. 38(b), Plaintiffs demand a trial by jury for all issues

5    so triable under the law.

6

7    DATED: February 25, 2016              Respectfully submitted,

8                                          **GIBBS LAW GROUP LLP**

9

10                                         By:    */s/ David Stein*

11

12                                         Eric H. Gibbs (SBN 178659)
                                           David Stein (SBN 257465)
13                                         Dylan Hughes (SBN 209113)
                                           One Kaiser Plaza, Suite 1125
14                                         Oakland, California 94612
                                           Telephone:   (510) 350-9700
15                                         Facsimile:    (510) 350-9701
                                           ehg@classlawgroup.com
16                                         ds@classlawgroup.com
17                                         dsh@classlawgroup.com
18
19                                         Kim D. Stephens (*pro hac vice*)
20                                         Jason T. Dennett (*pro hac vice*)
21                                         **TOUSLEY BRAIN STEPHENS PLLC**
                                           1700 Seventh Avenue, Suite 2200
22                                         Seattle, WA 98101
23                                         Telephone:   (206) 682-5600
                                           Facsimile:    (206) 682-2992
24                                         kstephens@tousley.com
25                                         jdennett@tousley.com
26
                                           Gregory F. Coleman (*pro hac vice*)
27                                         Lisa A. White (*pro hac vice*)
28                                         Mark E. Silvey (*pro hac vice*)

                                           34
FIRST AMENDED CLASS ACTION COMPLAINT
CASE NO. 8:15-CV-02052-DOC-KES

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**GREG COLEMAN LAW PC**
First Tennessee Plaza
800 S. Gay Street, Suite 1100
Knoxville, Tennessee 37929
Telephone: (865) 247-0080
Facsimile: (865) 533-0049
greg@gregcolemanlaw.com
lisa@gregcolemanlaw.com
mark@gregcolemanlaw.com

Shanon J. Carson (*pro hac vice*)
Eric Lechtzin (SBN 248958)
**BERGER & MONTAGUE, P.C.**
1622 Locust Street
Philadelphia, PA 19103
215-875-3000 Telephone
215-875-4604 Facsimile
scarson@bm.net
elechtzin@bm.net

Paul C. Peel (*pro hac vice*)
**FARRIS BOBANGO BRANAN PLC**
999 S. Shady Grove Road, Suite 500
Memphis, Tennessee 38120
(901) 259-7100 Telephone
(901) 259-7150 Facsimile
ppeel@farris-law.com

*Attorneys for Plaintiffs*

FIRST AMENDED CLASS ACTION COMPLAINT
CASE NO. 8:15-CV-02052-DOC-KES