Eric H. Gibbs (SBN 178658)
ehg@classlawgroup.com
David Stein (SBN 257465)
ds@classlawgroup.com
**GIBBS LAW GROUP LLP**
505 14th Street, Suite 1110
Oakland, California 94612
Telephone: (510) 350-9700
Facsimile: (510) 350-9701

Kim D. Stephens (*pro hac vice*)
kstephens@tousley.com
Jason T. Dennett (*pro hac vice*)
jdennett@tousley.com
**TOUSLEY BRAIN STEPHENS PLLC**
1700 7th Avenue, Suite 2200
Seattle, Washington 98101
Telephone: (206) 682-5600
Facsimile: (206) 682-2992

*Attorneys for Plaintiffs*

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| BILLY GLENN, KATHY WARBURTON, KIM FAMA, CORINNE KANE, ROXANA FITZMAURICE, and JAHAN MULLA, on behalf of themselves and all others similarly situated, <br><br> Plaintiffs, <br><br> v. <br><br> HYUNDAI MOTOR AMERICA and HYUNDAI MOTOR COMPANY, <br><br> Defendants. | Case No. 8:15-cv-02052-DOC-KES <br><br> **PLAINTIFFS' MEMORANDUM IN SUPPORT OF MOTION FOR CLASS CERTIFICATION** <br><br> Date: October 30, 2017 <br> Time: 8:30 a.m. <br> Judge: Hon. David O. Carter <br> Courtroom: 9D |

# TABLE OF CONTENTS

Page

I.   INTRODUCTION ................................................................................................ 1

II.  FACTUAL BACKGROUND ............................................................................ 2

   A.  The Defective Panoramic Sunroofs in Class Vehicles ......................... 2

   B.  The Dangerous Failings of Class Vehicles' Panoramic Sunroofs ....... 4

   ███████████████████████████████████████ ..................................... 7

   D.  Pressured by the NHTSA, Hyundai Implemented a Very Narrow Recall. .......... 8

   ███████████████████████████████████████ ..................................... 10

   F.  Hyundai Has and Will Continue to Profit from Its Misconduct ........... 15

III. ARGUMENT ..................................................................................................... 17

   A.  The Proposed Classes ......................................................................... 18

   B.  Numerosity Is Satisfied ...................................................................... 19

   C.  Common Questions Both Exist and Predominate. .............................. 19

      1. Plaintiffs' Non-Express-Warranty Claims .................................... 20

         a)  The Predominant Issues ........................................................... 20

         b)  The Common Evidence Plaintiffs Will Use .............................. 21

      2. Plaintiffs' Express Warranty Claims .............................................. 23

   D.  Plaintiffs' Claims Are Typical of Other Class Members. .................. 25

   E.  The Adequacy Requirement Is Satisfied. ........................................... 26

   F.  Injunctive and Declaratory Relief Are Appropriate Per Rule 23(b)(2). .......... 26

   G.  The Superiority of the Class Action Device ....................................... 27

i

1

IV.  CONCLUSION ...................................................................................................28

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

PLAINTIFFS' MEMORANDUM ISO MOTION FOR CLASS CERTIFICATION
CASE NO. 8:15-CV-02052-DOC-KES

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Anthony v. Gen. Motors Corp.*,
   33 Cal. App. 3d 699 (1973)......................................................................24

*BK Trucking Co. v. Paccar, Inc.*,
   2016 WL 3566723 (D.N.J. June 30, 2016) ............................................20

*BMW of N. Am., Inc. v. Gore*,
   701 So. 2d 507 (Ala. 1997) ....................................................................22

*Briseno v. ConAgra Foods, Inc.*,
   844 F.3d 1121 (9th Cir. 2017).................................................................18

*Chamberlan v. Ford Motor Co.*,
   402 F.3d 952 (9th Cir. 2005)...................................................................17

*Daniel v. Ford Motor Co.*,
   806 F.3d 1217 (9th Cir. 2015).................................................................24

*Estakhrian v. Obenstine*,
   2017 WL 2191622 (C.D. Cal. Feb. 4, 2017)..........................................18

*Falco v. Nissan N. Am.*, No. 13-cv-00686,
   2016 WL 1327474 (C.D. Cal. Apr. 5, 2016)..........................................17

*Glenn v. Hyundai Motor Am.*,
   2016 WL 3621280 (C.D. Cal. June 24, 2016) ..................................20, 21

*Hanlon v. Chrysler Corp.*,
   150 F.3d 1011 (9th Cir. 1998).................................................................26

*In re ConAgra Foods, Inc.*,
   90 F. Supp. 3d 919 (C.D. Cal. 2015).......................................................23

*In re Med. Capital Sec. Litig.*,
   2011 WL 5067208 (C.D. Cal. July 26, 2011).........................................24

ii

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

*In re Porsche Cars N. Am.*,
880 F. Supp. 2d 801 (S.D. Ohio 2012)...................................................21

*Indoor Billboard/Wash. v. Integra Telecom of Wash.*,
170 P.3d 10 (Wash. 2007)........................................................................21

*Just Film, Inc. v. Buono*,
847 F.3d 1108 (9th Cir. 2017)................................................................26

*Keegan v. Am. Honda Motor Co.*,
284 F.R.D. 504 (C.D. Cal. 2012) ...............................................17, 20, 28

*Leyva v. Medline Indus. Inc.*,
716 F.3d 510 (9th Cir. 2013)...................................................................22

*Litty v. Merrill Lynch & Co.*,
No. CV 14-0425, 2015 WL 4698475.......................................................19

*Lozano v. AT &T Wireless Servs., Inc.*,
504 F.3d 718 (9th Cir. 2007)...................................................................25

*Mason v. Mortg. Am.*,
114 Wash. 2d 842 (1990) .........................................................................23

*McClary v. Erie Engine & Mfg. Co.*,
1994 WL 803088 (D.N.H. Nov. 23, 1994) ..............................................20

*Meacham v. Knolls Atomic Power Laboratory*,
554 U.S. 84 (2008) ...................................................................................24

*Mercedes-Benz of N. Am. v. Dickenson*,
720 S.W.2d 844 (Tex. App. 1986) ...........................................................23

*Morales v. Kraft Foods Grp., Inc.*,
No. 14-cv-04387, 2015 WL 10786035 (C.D. Cal. June 23, 2015)...............23

*Parenteau v. General Motors, LLC*,
No. 14-cv-04961-RGK (MANx), 2015 WL 1020499 (C.D. Cal. Mar. 5, 2015)...........21

*Parsons v. Ryan*,
754 F.3d 657 (9th Cir. 2014)...................................................................27

PLAINTIFFS' MEMORANDUM ISO MOTION FOR CLASS CERTIFICATION
CASE NO. 8:15-CV-02052-DOC-KES

*Pulaski & Middleman, LLC v. Google*,
  802 F.3d 979 (9th Cir. 2015)..................................................................22

*Raffin v. Medicredit, Inc.*,
  No. 15-cv-4912-GHK, 2017 WL 131745 (C.D. Cal. Jan. 3, 2017)..............26

*Rodriguez v. Hayes*,
  591 F.3d 1105 (9th Cir. 2010)..................................................................25

*Sanchez-Knutson v. Ford Motor Co.*,
  310 F.R.D. 529 (S.D. Fla. 2015) ..............................................................23

*Simpson Strong-Tie Co. v. Gore*,
  49 Cal. 4th 12 (2010)...............................................................................24

*Smajlaj v. Campbell Soup Co.*,
  782 F. Supp. 2d 84 (D.N.J. 2011) .............................................................23

*Spann v. J.C. Penney Corp.*,
  No. 12-cv-0215, 2015 WL 1526559 (C.D. Cal. Mar. 23, 2015)..................22

*Torres v. Mercer Canyons Inc.*,
  835 F.3d 1125 (9th Cir. 2016) ..................................................................19

*Tyson Foods, Inc. v. Bouaphakeo*,
  136 S. Ct. 1036 (2016) .......................................................................19, 22

*Wolin v. Jaguar Land Rover N. Am., LLC*,
  617 F.3d 1168 (9th Cir. 2010)...............................................17, 24, 25, 27

*Yamada v. Nobel Biocare Holding AG*,
  275 F.R.D. 573 (C.D. Cal. 2011) ..............................................................24

**Statutes**

15 U.S.C.A. § 2310(d)(1)................................................................................23

Cal. Civ. Code § 1794....................................................................................22

Section 2714 of the Commercial Code ...........................................................22

iv

# Rules

Fed. R. Civ. P. 23(a)(4) ................................................................................. 26

Fed. R. Civ. P. 23(a)(1) ................................................................................. 19

Fed. R. Civ. P. 23(a) ..................................................................................... 26

Fed. R. Civ. P. 23(a)(2) and (b)(3) ............................................................... 19

Fed. R. Civ. P. 23(a)(4) or Rule 23(g) .......................................................... 26

Fed. R. Civ. P. 23(b)(2) ................................................................................. 26

Fed. R. Civ. P. 23(b)(3) ........................................................................... 22, 27

# Other Authorities

Newberg on Class Actions § 3:31 ................................................................. 26

PLAINTIFFS' MEMORANDUM ISO MOTION FOR CLASS CERTIFICATION
CASE NO. 8:15-CV-02052-DOC-KES

## I.    **INTRODUCTION**

This proposed class action, brought by Plaintiffs in six states, stems from Hyundai's decision to sell vehicles with panoramic sunroofs even though the sunroofs are prone to shattering without warning. Drivers compare the sound of the shattering to that of a gunshot and report being cut by the falling glass, being so startled they veer out of their lanes, and having their vehicles' paint and upholstery damaged by the broken glass.

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

Hyundai has publicly denied there's a problem and refused to cover shattered sunroofs under warranty, claiming instead that flying rocks are to blame.

The widespread nature of Hyundai's conduct—concealing a safety defect and refusing to take responsibility—makes class certification appropriate. Classwide proof can answer the main questions in this case: ██████████████████████████████

████████████████████████████████████████

████████████████████████████████   In addition to answering these questions for all class members at once, a certified class action would provide the added benefit of being able to provide relief to all affected drivers. This relief could include an injunction that requires Hyundai to warn drivers, help them avoid being harmed, and fulfill its contractual obligations under its written warranty. Monetary relief can also be provided classwide, as consumers should be compensated for paying far more for their vehicles than they would have had Hyundai complied with the law and publicly disclosed the danger. Plaintiffs therefore ask that the Court certify the proposed classes, appoint class counsel, and direct that notice be sent to class members.

1

## II.   FACTUAL BACKGROUND

### A.   The Defective Panoramic Sunroofs in Class Vehicles

Panoramic sunroofs are larger than traditional sunroofs, allowing more light to enter the vehicle cabin. (*Id.*, Ex. 2 at 19, Ex, 3 at 28, Ex. 4 at 40, Ex. 5 at 46.) ████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████

The "Class Vehicles" in this case, which are listed below, each came equipped with a panoramic sunroof:

- ▪ 2011-2016 model year Sonata Hybrid and Tucson
- ▪ 2012-2016 model year Sonata and Veloster
- ▪ 2013-2016 model year Santa Fe, Santa Fe Sport, and Elantra GT

(*Id.*, Ex. 7 at 61, Ex. 8 at 70, Answer to Second Am. Compl. (Dkt. No. 77) ¶ 20.)

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████ Tempered glass is rapidly cooled when it is made so that its outer surface contracts around its center core. (Read Decl. ¶¶ 18, 40.) This process strengthens the glass, but it has a downside: when a crack propagates from the glass's surface into the compressed core, the entire panel of glass abruptly shatters. (Read Decl. ¶¶ 18, 40; Stein Decl., Ex. 9 at 89.) Shattering can occur immediately after a crack develops or later, as the crack slowly grows until it reaches the

2

center core. (Read Decl. ¶ 41; Stein Decl., Ex. 9 at 86-89.)

Next, it is important to understand that cracks grow in tempered glass only when stresses are applied, (Read Decl. ¶ 41; Stein Decl., Ex. 9 at 83-89), ███████████

███████████████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████████

████

████████████████████████████████████████████

PLAINTIFFS' MEMORANDUM ISO MOTION FOR CLASS CERTIFICATION
CASE NO. 8:15-CV-02052-DOC-KES

**B.**     **The Dangerous Failings of Class Vehicles' Panoramic Sunroofs**

Sunroofs are not like tires, brake pads, or other "wear parts"—they should last the life of a vehicle and should withstand the ordinary and foreseeable conditions to which vehicles are exposed. (Hannemann Decl. ¶¶ 24, 25.) This includes exposure to a wide variety of temperatures, vehicle movement, and sudden shocks such as a car wash on a hot day and rocks kicked up off the road. (*Id.* ¶ 25.) But the sunroofs in Class Vehicles do not reliably withstand the stresses to which vehicles are commonly exposed. ████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

███████████████

As a result, although many Class Vehicles are just a few years old, more than a *thousand* Hyundai panoramic sunroofs have shattered already, (Stein Decl., Ex. 30-31 at 188-193), and every model and model year of Class Vehicle has suffered from spontaneous shattering. (*Id.*, Ex. 1 at 15; Exs. 32-34 at 194-96.)

The shattering endangers drivers, passengers, and anyone else on the road. (Hannemann Decl. ¶¶ 33-43; Stein Decl., Ex. 35 at 229.) Perhaps most notable is the distraction caused by the sudden shattering. It is now well known that driver distraction leads to many crashes, injuries, and deaths each year. (Hannemann Decl. ¶ 34; *see also* Stein Decl., Ex. 28 at 175.) And when panoramic sunroofs shatter in Class Vehicles, the abrupt shattering of a large glass panel directly over a driver's head is so loud many drivers believe they have been in an accident or that a gun was fired, as the following driver reports reflect:

█ ██████████████████████████████████

██████████

█ ███████████████████████

█ ████████████████████████████████████

████████████████████

4

(Stein Decl., Ex. 36 at 241, 245, 270, 273, 277; *see also* Hannemann Decl. ¶ 36; Stein Decl., Ex. 28 at 175; Ex. 27 at 150 ("The driver was not able to see for a moment because glass pieces fell into the vehicle like rain.").) Even momentary distractions are dangerous, as drivers may leave their lanes when distracted or fail to notice objects, vehicles, and pedestrians entering their paths. (Hannemann Decl. ¶ 35.)

Startled drivers may also react by swerving or braking:

PLAINTIFFS' MEMORANDUM ISO MOTION FOR CLASS CERTIFICATION
CASE NO. 8:15-CV-02052-DOC-KES

(Stein Decl., Ex. 36 at 256, 275, 276, 281, 285, 288; Hannemann Decl. ¶ 35.)

Although when tempered glass breaks it is considered safer than some other types of glass, it still has sharp edges that can cut skin and eyes:

(Stein Decl., Ex. 36 at 253, 270, 275, 276, 277, 283; *accord* Read Decl. ¶ 16.)

---

6

(Stein Decl., Ex. 36 at 251, 271, 280.)

PLAINTIFFS' MEMORANDUM ISO MOTION FOR CLASS CERTIFICATION
CASE NO. 8:15-CV-02052-DOC-KES

1 ███████████████████████████

2 █ ████████████████████████████████████████████

3 ██████████████████████████████

4 █ ████████████████████████████████████

5 (Stein Decl., Ex. 36 at 270-271.)

6      **D.**    **Pressured by the NHTSA, Hyundai Implemented a Very Narrow Recall.**

7 █████████████████████████████████████████

8 ███████████████████████████████████████████████

9 ███████████████████████████████████████████████

10 ███████████████████████████████████████████████

11 ███████████████████████████████████████████████

12 ███████████████████████████████████████████████

13 ███████████████████████████████████████████████

14 ███████████████████████████████████████████████

15 ███████████████████████████████████████████████

16 ████████████████████

17     In October 2012, the NHTSA opened an investigation, having received several

18 driver complaints of panoramic sunroofs shattering in the 2012 model year Veloster. (*Id.*,

19 Ex. 40.) In its investigation-opening document, the NHTSA wrote "[s]hattering glass

20 could distract the driver, and the glass particles produced could injure occupants." (*Id.*)

21 The NHTSA asked Hyundai to provide an assessment of why the sunroofs were shattering.

22 (*Id.*, Ex. 41 at 324-29.) ████████████████████████████

23 ███████████████████████████████████████████████

24 ███████████████████████████████████ Instead, Hyundai said an

25 "intermittent malfunction" of an assembly robot damaged some of the glass. (*Id.*)

26     Acquiescing to NHTSA pressure, Hyundai implemented a safety recall, but only for

27 the vehicles manufactured during the short time frame when the assembly robot

28 purportedly malfunctioned, and for just a portion of one model year of one model (the

8

2012 Veloster). (*Id.*, Ex. 42 at 330-31.) ███████████████████████████

███████████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████████

███████████████████████████████████████████

████████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████████

██████████████████████████████████ Hyundai ultimately expanded the recall only slightly, to encompass about five thousand additional vehicles. (*Id.*, Ex. 51 at 348.)

████████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████████

███████████████████████████████████

PLAINTIFFS' MEMORANDUM ISO MOTION FOR CLASS CERTIFICATION
CASE NO. 8:15-CV-02052-DOC-KES

PLAINTIFFS' MEMORANDUM ISO MOTION FOR CLASS CERTIFICATION
CASE NO. 8:15-CV-02052-DOC-KES

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

PLAINTIFFS' MEMORANDUM ISO MOTION FOR CLASS CERTIFICATION
CASE NO. 8:15-CV-02052-DOC-KES

PLAINTIFFS' MEMORANDUM ISO MOTION FOR CLASS CERTIFICATION
CASE NO. 8:15-CV-02052-DOC-KES

13

PLAINTIFFS' MEMORANDUM ISO MOTION FOR CLASS CERTIFICATION
CASE NO. 8:15-CV-02052-DOC-KES

1  ████████████████████████████████████████████████████████

2  ████████████████████████████████████████████████████████

3  ████████████████████████████████████████████████████████

4  ████████████████████████████████████████████████████████

5  ████████████████████████████████████████████████████████

6  ████████████████████████████████████████████████████████

7  ██████████████████████████████████████████████████

### F.    Hyundai Has and Will Continue to Profit from Its Misconduct.

Plaintiffs Roxana Fitzmaurice, Billy Glenn, Kim Fama, Jahan Mulla, Kathy Warburton, and Corinne Kane all purchased Class Vehicles between November 2011 and March 2015 in California, Alabama, New Hampshire, New Jersey, Texas, and Washington, respectively. (*Id.*, Exs. 85 at 888, 86 at 896, 87 at 902, 88 at 905, 89 at 911, 90 at 914.) Hundreds of thousands of other individuals have bought the vehicles as well.

████████████████████████████████████████████████████████

Hyundai was able to sell Plaintiffs and the other class members Class Vehicles at prices normally charged for non-defective vehicles. Hyundai thus profited at the expense of Plaintiffs and its other customers, who all received dangerous vehicles worth less than the non-defective vehicles for which they had bargained.

To assess the financial harm Hyundai caused consumers at the point of sale, Plaintiffs have retained two expert witnesses—Colin Weir and Steven Gaskin—to measure damages based on conjoint analysis, which uses a combination of economic theory, statistics, and survey data to estimate the decrease in market value that would have resulted had Hyundai disclosed the defect at the time and point of sale. (Gaskin Decl., ¶¶ 4, 55-57; Weir Decl., ¶ 7, 15.) This methodology is legally sound and is discussed in further detail below.

In addition, after selling the defective vehicles, Hyundai has also shirked its post-sale warranty obligations. Hyundai provides a written warranty obligating it to repair or replace components "found to be defective in material or workmanship under normal use

and maintenance" within the first five years and 60,000 miles. (Stein Decl., Ex. 91 at 936, Ex. 92 at 988, Ex. 93 at 1023-24) Although Hyundai covers some shattered sunroofs under warranty, ███████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████████████

██████████████████████████████████████

Among others, Hyundai has denied warranty coverage for Plaintiffs Corinne Kane (*id.*, Ex. 97 at 1068 ████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████

█████████ Ex. 103 at 140:15-142:24), Kathy Warburton (*id.*, Ex. 98 at 1070 ████████

██████████████████████████████████████████████████████████████████████

███████████████████████████, Ex. 104 at 254:5-261:22), Roxana Fitzmaurice (*id.*, Ex. 99 at 97:23-98:25, 120:7-21, 139:2-14),  Jahan Mulla (*id.*, Ex. 100 at 247:5-250:15), Kim Fama (*id.*, Ex. 101 at 192:25-193:20, 203:9-204:12), and Billy Glenn (*id.*, Ex. 102 at 217:21-222:7, 256:1-9.)

Among the problems with Hyundai's warranty practice is the fact that highly technical expertise is needed to determine whether a particular sunroof was struck by road debris. (Read Decl. ¶ 43.) ███████████████████████████████████████████████

███████████████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████████████

PLAINTIFFS' MEMORANDUM ISO MOTION FOR CLASS CERTIFICATION
CASE NO. 8:15-CV-02052-DOC-KES

## III.  <u>ARGUMENT</u>

Class certification is appropriate when the four factors of Rule 23(a)—numerosity, commonality, typicality, and adequacy—are satisfied and when at least one prong of Rule 23(b) is satisfied. As a number of Ninth Circuit and Central District courts have held, cases involving defects in mass-produced vehicles are particularly well-suited for class certification. *See, e.g.*, *Wolin v. Jaguar Land Rover N. Am., LLC*, 617 F.3d 1168 (9th Cir. 2010); *Chamberlan v. Ford Motor Co.*, 402 F.3d 952 (9th Cir. 2005); *Falco v. Nissan N. Am.*, No. 13-cv-00686, 2016 WL 1327474 (C.D. Cal. Apr. 5, 2016); *Keegan v. Am. Honda Motor Co.*, 284 F.R.D. 504 (C.D. Cal. 2012). That holds true here, where certification is appropriate under both Rule 23(b)(2), because uniform injunctive and declaratory relief

PLAINTIFFS' MEMORANDUM ISO MOTION FOR CLASS CERTIFICATION
CASE NO. 8:15-CV-02052-DOC-KES

would benefit all class members, and Rule 23(b)(3), because class members are entitled to monetary relief. Plaintiffs ask that the Court certify classes under both prongs.

## A. <u>The Proposed Classes</u>

Plaintiffs seek statewide class certification of their consumer protection, unjust enrichment, and warranty claims under the laws of California, Alabama, New Hampshire, New Jersey, Texas, and Washington. Plaintiffs propose three class definitions: one for their express warranty claims, which includes those owners and lessees who have incurred repair expenses; one for their UCL, Song-Beverly, and unjust enrichment claims, which includes only purchasers and lessees of new vehicles; and one for their remaining consumer protection claims, which covers both new and used purchasers and lessees:

> *Express Warranty Class: All persons and entities who purchased or leased a Class Vehicle in [the applicable state] and who paid to repair a shattered panoramic sunroof within the applicable warranty period.*

> *UCL, Unjust Enrichment, & Song-Beverly Class: All persons and entities who bought or leased a new Class Vehicle in [the applicable state].*

> *Remaining Consumer Protection Claims Class: All persons and entities who bought or leased a Class Vehicle in [the applicable state].*

In the past, courts in this circuit have scrutinized proposed class definitions to determine whether they were "ascertainable," but earlier this year the Ninth Circuit "rejected an ascertainability requirement, holding that 'the language of Rule 23 does not impose a freestanding administrative feasibility prerequisite to class certification.'" *Estakhrian v. Obenstine*, 2017 WL 2191622, at *22 (C.D. Cal. Feb. 4, 2017) (quoting *Briseno v. ConAgra Foods, Inc.*, 844 F.3d 1121, 1125 (9th Cir. 2017)). Accordingly, proposed class definitions suffice when they use objective characteristics—and they do here since membership turns on whether someone bought a particular vehicle, in a particular state, and whether they paid for sunroof repairs. *See Briseno*, 844 F.3d at 1124 (affirming district court that had "held that, at the certification stage, it was sufficient that the class was defined by an objective criterion").

18

**B. <u>Numerosity Is Satisfied.</u>**

Under Federal Rule of Civil Procedure 23(a)(1), the proposed classes must be "so numerous that joinder of all members is impracticable." While there is not an exact numerical cutoff for numerosity, it is presumed satisfied if a class consists of 40 or more members. *Litty v. Merrill Lynch & Co.*, No. CV 14-0425, 2015 WL 4698475, at *3 (C.D. Cal. Apr. 27, 2015). Here, Hyundai sold and leased hundreds of thousands of Class Vehicles, including well more than 40 Class Vehicles in each of the six states for which statewide classes are proposed—Alabama, California, New Hampshire, New Jersey, Texas, and Washington. (Stein Decl., Ex. 106.) Thus, numerosity is satisfied.

**C. <u>Common Questions Both Exist and Predominate.</u>**

Rule 23(a)(2) and (b)(3) pose closely related requirements. To avoid repetition, Plaintiffs analyze both (a)(2) commonality and (b)(3) predominance together here.

Under (a)(2), there must be "questions of law or fact common to the class," and under (b)(3) those common questions must "predominate over any questions affecting only individual members." Whereas an individual question is one where class members would need to present evidence that "varies from member to member," a "common question is one where the same evidence will suffice for each member to make a prima facie showing or the issue is susceptible to generalized, class-wide proof." *Tyson Foods, Inc. v. Bouaphakeo*, 136 S. Ct. 1036, 1045 (2016) (internal quotation marks and brackets omitted). Determining whether the common questions predominate is not a matter of "nose-counting"; instead, "more important questions apt to drive the resolution of the litigation are given more weight in the predominance analysis over individualized questions which are of considerably less significance to the claims of the class." *Torres v. Mercer Canyons Inc.*, 835 F.3d 1125, 1134 (9th Cir. 2016).

Below, Plaintiffs show that each of their claims hinge primarily—if not exclusively—on factual and legal issues that can indeed be resolved for all class members using common evidence. The analysis is divided into two categories: (i) Plaintiffs' non-express-warranty claims, which allege liability based on Hyundai's pre-sale conduct and

PLAINTIFFS' MEMORANDUM ISO MOTION FOR CLASS CERTIFICATION
CASE NO. 8:15-CV-02052-DOC-KES

seek point-of-sale damages and restitution; and (ii) Plaintiffs' express-warranty claims, which allege liability based on Hyundai's post-sale handling of warranty repairs and seek post-sale damages.

### 1. Plaintiffs' Non-Express-Warranty Claims

#### a) <u>The Predominant Issues</u>

Each of Plaintiffs' non-express warranty claims depend on Plaintiffs' ability to prove the following contentions: (i) Class Vehicles' sunroofs are defective and prone to abruptly shattering; (ii) the shattering is dangerous; and (iii) Hyundai knew of the problem, but neither disclosed it nor fixed it before selling Class Vehicles to class members.

If Plaintiffs are able to establish each of those facts, they will prevail under each of the state consumer protection laws at issue in this litigation:

- <u>California CLRA</u>: Claim turns on whether plaintiffs can show "that a defect … posed 'safety concerns,' such that defendants' failure to disclose it could constitute a material omission." *Keegan*, 284 F.R.D. at 529.

- <u>California UCL</u>: Violation can "be prove[n] with common evidence regarding the nature of the design defect…, its likely impact on vehicle safety, what [defendant] knew or did not know, and what it disclosed or did not disclose to consumers." *Id.* at 534.

- <u>Alabama DTPA</u>: As the Court held earlier in the litigation, a claim can be established if Hyundai failed to disclose a known safety defect. *Glenn v. Hyundai Motor Am.*, 2016 WL 3621280, at *13 (C.D. Cal. June 24, 2016).

- <u>New Hampshire CPA</u>: Claim can be established through "failure to warn of a defective or dangerous condition that could cause personal injury." *McClary v. Erie Engine & Mfg. Co.*, 1994 WL 803088, at *2 (D.N.H. Nov. 23, 1994).

- <u>New Jersey Consumer Fraud Act</u>: Claim can be based on manufacturer's failure to disclose known defect at the time of purchase. *BK Trucking Co. v. Paccar, Inc.*, 2016 WL 3566723, at *9 (D.N.J. June 30, 2016).

- <u>Texas DTPA</u>: Statute is violated when a manufacturer "fails to inform

20

consumers of a defect that presents a safety risk." *In re Porsche Cars N. Am.*, 880 F. Supp. 2d 801, 878 (S.D. Ohio 2012).

- ▪ Washington CPA: Claim can be based on "knowing failure to reveal something of material importance." *Id.* at 880-81 (citing *Indoor Billboard/Wash. v. Integra Telecom of Wash.*, 170 P.3d 10, 18 (Wash. 2007)).

Plaintiffs would also establish their Song-Beverly implied warranty claim and unjust enrichment claims by proving the same set of facts. *See Parenteau v. General Motors, LLC,* No. 14-cv-04961-RGK (MANx), 2015 WL 1020499, at *10 (C.D. Cal. Mar. 5, 2015) (Song-Beverly implied warranty violated where vehicles are not sold "in safe condition and substantially free of defects"); *Glenn*, 2016 WL 7507766, at *6 (sustaining Plaintiffs' unjust enrichment claims based on allegations that Hyundai had concealed the defect before Plaintiffs entered into their purchase contracts).

## b) **The Common Evidence Plaintiffs Will Use**

Plaintiffs' Liability Evidence: Plaintiffs can and will address each of the predominant factual issues in the case using common, generalized evidence. As summarized in the Factual Background section, Plaintiffs intend to prove the existence of the sunroof defect, and Hyundai's discovery and concealment of it, mostly from Hyundai's own documents, ████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████ Plaintiffs will also rely on the expert opinions of highly qualified glass and automotive experts, who can help explain the nature of the defect in and the combination of common design factors that lead to the shattering. (Read Decl. ¶¶ 5-10; Hannemann Decl. ¶¶ 6-15.)

Plaintiffs likewise have common proof of the danger posed by sunroof shattering. ████████████████████████████████████████████████████████████████████

PLAINTIFFS' MEMORANDUM ISO MOTION FOR CLASS CERTIFICATION
CASE NO. 8:15-CV-02052-DOC-KES

1 ██████████████████████████████████████████████

2 ██████████████████████████████████████████████

3 ██████████████████████████████████████████████

4 ██████████████████████████████████████████████

5 ██████████████████████████████████████████████

6 ██████████████████████████████████████████████

7 ██████████████████████████████████████████████

8 ████████████████████

9     <u>Plaintiffs' Evidence of Damages and Restitution:</u>  Plaintiffs are not required to show

10 that their damages can be established using common evidence. *Pulaski & Middleman, LLC*

11 *v. Google*, 802 F.3d 979, 988 (9th Cir. 2015). So even if class members ultimately need to

12 submit a claim form or other individualized proof to establish damages, the common

13 liability issues raised by their claims are enough to warrant class certification. *Tyson*, 136

14 S. Ct. at 1045; *Leyva v. Medline Indus. Inc.*, 716 F.3d 510, 514 (9th Cir. 2013) ("the

15 presence of individualized damages cannot, by itself, defeat class certification under Rule

16 23(b)(3)"). Using common proof for damages can be simpler for both class members and

17 the Court, however, and Plaintiffs intend to proffer expert testimony to help quantify the

18 classes' damages.

19     Class members' harm may be measured by calculating the difference in market

20 value between the defective vehicles class members actually received and the non-

21 defective vehicles they were entitled to receive.[2] To measure that difference, Plaintiffs will

---

[2] *E.g., Pulaski,* 802 F.3d at 989 (restitution may be based on what a purchaser would have paid at the time of purchase had the purchaser received full information); *Spann v. J.C. Penney Corp.*, No. 12-cv-0215, 2015 WL 1526559, at *9 (C.D. Cal. Mar. 23, 2015) (under the CLRA, plaintiffs can recover the difference between the value parted with and value received); Cal. Civ. Code § 1794 (Song Beverly statute incorporates section 2714 of the Commercial Code, which measures difference between value of goods accepted

---

PLAINTIFFS' MEMORANDUM ISO MOTION FOR CLASS CERTIFICATION
CASE NO. 8:15-CV-02052-DOC-KES

offer testimony from Steven Gaskin and Colin Weir. Mr. Gaskin has developed a survey study that he is prepared to execute as part of a conjoint analysis to measure the effect the defect would have had on the market value of Class Vehicles if Hyundai had disclosed its knowledge. (Gaskin Decl., ¶¶ 4-6, 55-57; *see also* Weir Decl. ¶¶ 7, 15.) And Mr. Weir, an economist, is prepared to help explain why that analysis is appropriate economically in these circumstances. (Weir Decl. ¶¶ 16-20.) Similar analyses have been accepted as class-wide proof in automotive and other consumer class actions. *Sanchez-Knutson v. Ford Motor Co.*, 310 F.R.D. 529, 538-39 (S.D. Fla. 2015); *Morales v. Kraft Foods Grp., Inc.*, No. 14-cv-04387, 2015 WL 10786035, at *10 (C.D. Cal. June 23, 2015); *In re ConAgra Foods, Inc.*, 90 F. Supp. 3d 919, 952-54, 1026-31 (C.D. Cal. 2015).

## 2.  Plaintiffs' Express Warranty Claims

To a large degree, Plaintiffs' claims for breach of express warranty also depend on proving the existence of the defect. (*Compare* Stein Decl., Exs. 91-92 at 936, 988 (Hyundai's warranty requires it to repair or replace components that are "defective in material or workmanship")), *with* 15 U.S.C.A. § 2310(d)(1) (the Magnuson-Moss Act provides a claim for any "consumer who is damaged by the failure of a ... warrantor ... to comply with any obligation under ... a written warranty"). Plaintiffs allege the sunroofs installed in Class Vehicles are defective in material or workmanship and therefore Hyundai breached its express warranty by failing to repair and replace them free of charge. (Second Am. Compl. ¶ 41-42.) It makes little sense for class members to try and establish the defect individually, when doing so will require an "elaborate and probably a protracted

---

and value as warranted); *BMW of N. Am., Inc. v. Gore*, 701 So. 2d 507 (Ala. 1997) (Alabama DTPA damages based on diminution in value of vehicle); *Smajlaj v. Campbell Soup Co.*, 782 F. Supp. 2d 84, 99 (D.N.J. 2011) (New Jersey FCA recovery may be based on product being worth less than promised); *Mercedes-Benz of N. Am. v. Dickenson*, 720 S.W.2d 844, 848 (Tex. App. 1986) (Texas DTP-CPA takes difference between value of property as warranted and as delivered); *Mason v. Mortg. Am.*, 114 Wash. 2d 842, 849 (1990) (Washington CPA damages are intended to give plaintiffs the benefit of their bargain).

PLAINTIFFS' MEMORANDUM ISO MOTION FOR CLASS CERTIFICATION
CASE NO. 8:15-CV-02052-DOC-KES

trial," which is "exactly the sort of common issue for which class actions are designed." *Anthony v. Gen. Motors Corp.*, 33 Cal. App. 3d 699, 705 (1973); *accord Wolin*, 617 F.3d at 1174 (finding the existence of a common defect to be among the questions common to the class for breach of warranty claim); *Yamada v. Nobel Biocare Holding AG*, 275 F.R.D. 573, 579 (C.D. Cal. 2011), *amended* at 2012 WL 12883221 (C.D. Cal. Aug. 31, 2012) (common questions included existence of defect).

Plaintiffs' express warranty claim also poses the related common question of how to interpret the Hyundai warranty contract. (Stein Decl., Exs. 91-92 at 935, 988.) As this Court recognized in an earlier order, it may be necessary to determine whether the sunroof defect is better characterized as a "design defect" or a "manufacturing defect," and whether that distinction matters under the language of Hyundai's warranty contract. ECF No. 76 at 9; *see also Daniel v. Ford Motor Co.*, 806 F.3d 1217, 1224 (9th Cir. 2015) (discussing argument that "materials and workmanship" language excludes design defects). There would be great benefit to interpreting Hyundai's warranty contract for all class members at once. *In re Med. Capital Sec. Litig.*, 2011 WL 5067208, at *3 (C.D. Cal. July 26, 2011) (where a "breach of contract claim involves alleged violations of standardized contracts" the claim is "especially amenable to resolution by common proof").

The same is true for interpreting the exclusion language in Hyundai's warranty contract and whether Hyundai can enforce it. ██████████████████████████ ████████████████████████████████████████████████████ ████████████████████████████████████████ It is Hyundai's burden, when denying coverage under the exclusion, to establish the exclusion's applicability. *Simpson Strong-Tie Co. v. Gore*, 49 Cal. 4th 12, 23 (2010) ("It is a 'familiar' and 'longstanding' legal principle that '[w]hen a proviso ... carves an exception out of the body of a … contract those who set up such exception must prove it.'") (quoting *Meacham v. Knolls Atomic Power Laboratory*, 554 U.S. 84 (2008)). ██████████████████ ████████████████████████████████████████████████████ ████████████████████████████████████████████████████

PLAINTIFFS' MEMORANDUM ISO MOTION FOR CLASS CERTIFICATION
CASE NO. 8:15-CV-02052-DOC-KES

████ *accord* (Read Decl. at ¶ 43.) (highly technical expertise is needed for such an analysis, beyond what a dealership technician would possess).) As a result, a classwide determination can and should be made as to the propriety of Hyundai's reliance on the exclusion provision.

### D. **Plaintiffs' Claims Are Typical of Other Class Members.**

Rule 23(a)(3) requires that "the claims or defenses of the representative parties [be] typical of the claims or defenses of the class." "[T]he typicality requirement is permissive and requires only that the representative's claims are reasonably co-extensive with those of absent class members; they need not be substantially identical." *Rodriguez v. Hayes*, 591 F.3d 1105, 1124 (9th Cir. 2010). "In determining whether typicality is met, the focus should be on the defendants' conduct and plaintiff's legal theory, not the injury caused to the plaintiff." *Lozano v. AT &T Wireless Servs., Inc.*, 504 F.3d 718, 734 (9th Cir. 2007). Thus, typicality is "satisfied when each class member's claim arises from the same course of events, and each class member makes similar legal arguments to prove the defendant's liability." *Rodriguez*, 591 F.3d at 1124.

Here, Plaintiffs have essentially the same claims as everyone else who bought or leased a Class Vehicle: Hyundai sold or leased them vehicles with panoramic sunroofs with the known risk of shattering without warning. This common course of conduct gives rise to the same claims for all class members and caused each the same injury: they paid an inflated price for a vehicle due to Hyundai's concealment of the defect. *See Wolin*, 617 F.3d at 1175 (plaintiffs' claims were typical because they, like all class members, bought defective vehicles and sought to recover pursuant to the same legal theories, including violation of consumer protection laws and breach of warranty).

Likewise, Plaintiffs' express warranty claims are reasonably coextensive with those of absent class members. Like every other proposed class member, Plaintiffs purchased Class Vehicles equipped with panoramic sunroofs subject to the same written warranty. And as with every other proposed class member, Hyundai breached its express warranty obligations by failing to pay for repairs to the vehicles' sunroofs—even though neither

Hyundai nor its dealerships employed technicians capable of reliably determining whether any particular sunroof was struck by an external object. *See Just Film, Inc. v. Buono*, 847 F.3d 1108, 1117 (9th Cir. 2017) (quoting Newberg on Class Actions § 3:31 (5th ed.) (plaintiff's claim was typical because it shared "some common question of law and fact with class members' claims.").

### E. <u>The Adequacy Requirement Is Satisfied.</u>

The final Rule 23(a) requirement demands that "the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). This requirement is met as long as the named plaintiffs and their counsel (1) have no conflicts of interest with other class members, and (2) will prosecute the action vigorously. *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1020 (9th Cir. 1998). Here, there are no intra-class conflicts. To the contrary, Plaintiffs and the members of the classes share the same interest in holding Hyundai accountable for knowingly selling defective Class Vehicles. In addition, Plaintiffs' testimony and their effort throughout this litigation demonstrate that they understand their role and obligations as class representatives and will continue to press for classwide relief. (Stein Decl., ¶ 8.) Plaintiffs' counsel, for their part, are experienced attorneys with a history successfully litigating complex class actions, including against Hyundai and other manufacturers. (*Id.* ¶¶ 6-7; Stephens Decl. ¶¶ 2-4.) Counsel have successfully opposed two motions to dismiss, uncovered key documents in discovery, and engaged four experts to study and help explain technical issues for the factfinders in this litigation. (*Id.* ¶ 8.) There is no reason to doubt the adequacy of this representation under Rule 23(a)(4) or Rule 23(g).

### F. <u>Injunctive and Declaratory Relief Are Appropriate Per Rule 23(b)(2).</u>

Although Plaintiffs seek monetary relief through this action, the injunctive and declaratory relief they seek is important enough, alone, to justify class treatment. *See Raffin v. Medicredit, Inc.*, No. 15-cv-4912-GHK, 2017 WL 131745, at *10 (C.D. Cal. Jan. 3, 2017) (certifying claims for injunctive relief under (b)(2) and claims for monetary relief under (b)(3)). And with the four elements of Rule 23(a) all satisfied, Rule 23(b)(2)

PLAINTIFFS' MEMORANDUM ISO MOTION FOR CLASS CERTIFICATION
CASE NO. 8:15-CV-02052-DOC-KES

certification is "unquestionably satisfied when members of a putative class seek uniform injunctive or declaratory relief from policies or practices that are generally applicable to the class as a whole." *Parsons v. Ryan*, 754 F.3d 657, 688 (9th Cir. 2014).

Here, Plaintiffs seek just such injunctive and declaratory relief, targeting uniform Hyundai's policies and practices: Hyundai has not warned the drivers in jeopardy about the continued risk of abrupt panoramic sunroof shattering. Nor has Hyundai provided drivers with information that could prevent or mitigate the effects of sunroof shattering—whether through practical advice (to keep the sun shade closed to prevent glass from raining down) or repair procedures. ███████████████████████ ████████████████████████████████████████████████████ █████████████████████████ Declaratory and injunctive relief can halt these uniform unlawful practices, making (b)(2) certification appropriate.

## G. <u>The Superiority of the Class Action Device</u>

Having already discussed how the common questions predominate over any individual ones, the only remaining consideration for certifying a Rule 23(b)(3) class for monetary relief is whether "a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3).  Among the factors to be considered are: (A) class members' interests in individually controlling the prosecution of separate actions; (B) the extent and nature of any litigation concerning the controversy already begun by class members; (C) the desirability of concentrating the litigation of the claims in this forum; and (D) anticipated difficulties in managing a class action. *Id.* "Where recovery on an individual basis would be dwarfed by the cost of litigating on an individual basis, this factor weighs in favor of class certification." *Wolin*, 617 F.3d at 1175.

Here, as in *Wolin* and other cases decided in this district, "[f]orcing individual vehicle owners to litigate their cases, particularly where common issues predominate for the proposed class, is an inferior method of adjudication." *Wolin*, 617 F.3d at 1176. This is particularly true because the "funds required to marshal the type of evidence, including

PLAINTIFFS' MEMORANDUM ISO MOTION FOR CLASS CERTIFICATION
CASE NO. 8:15-CV-02052-DOC-KES

expert testimony, that will be necessary to pursue these claims against [a] well-represented corporate defendant[] would discourage individual class members from filing suit when the expected return is so small." *Keegan*, 284 F.R.D. at 549. Finally, concentrating class claims in this forum is desirable, as Hyundai is headquartered in California and the lawsuit is brought on behalf of drivers within this state and several others.

## IV.   **CONCLUSION**

For the above reasons, Plaintiffs ask that the Court certify the proposed classes, appoint class counsel, and direct the dissemination of class notice.

DATED: June 15, 2017                    Respectfully submitted,

**GIBBS LAW GROUP LLP**

By:   */s/ David Stein*

Eric H. Gibbs (SBN 178659)
David Stein (SBN 257465)
Dylan Hughes (SBN 209113)
505 14th Street, Suite 1110
Oakland, California 94612
Telephone:   (510) 350-9700
Facsimile:   (510) 350-9701
ehg@classlawgroup.com
ds@classlawgroup.com
dsh@classlawgroup.com

Kim D. Stephens (*pro hac vice*)
Jason T. Dennett (*pro hac vice*)
**TOUSLEY BRAIN STEPHENS PLLC**
1700 Seventh Avenue, Suite 2200
Seattle, WA 98101
Telephone:   (206) 682-5600
Facsimile:   (206) 682-2992
kstephens@tousley.com
jdennett@tousley.com

PLAINTIFFS' MEMORANDUM ISO MOTION FOR CLASS CERTIFICATION
CASE NO. 8:15-CV-02052-DOC-KES

Gregory F. Coleman (*pro hac vice*)
Lisa A. White (*pro hac vice*)
Mark E. Silvey (*pro hac vice*)
**GREG COLEMAN LAW PC**
First Tennessee Plaza
800 S. Gay Street, Suite 1100
Knoxville, Tennessee 37929
Telephone: (865) 247-0080
Facsimile: (865) 533-0049
greg@gregcolemanlaw.com
lisa@gregcolemanlaw.com
mark@gregcolemanlaw.com

Shanon J. Carson (*pro hac vice*)
Eric Lechtzin (SBN 248958)
**BERGER & MONTAGUE, P.C.**
1622 Locust Street
Philadelphia, PA 19103
215-875-3000 Telephone
215-875-4604 Facsimile
scarson@bm.net
elechtzin@bm.net

Paul C. Peel (*pro hac vice*)
**FARRIS BOBANGO BRANAN PLC**
999 S. Shady Grove Road, Suite 500
Memphis, Tennessee 38120
(901) 259-7100 Telephone
(901) 259-7150 Facsimile
ppeel@farris-law.com

*Attorneys for Plaintiffs*

PLAINTIFFS' MEMORANDUM ISO MOTION FOR CLASS CERTIFICATION
CASE NO. 8:15-CV-02052-DOC-KES